TIMES AMUSEMENT CORPORATION, Suing in Behalf of Itself and All Others Similarly Situated, Plaintiff, *v.* PAUL MOSS, as Commissioner of Licenses of The City of New York, Defendant.*

Supreme Court, Special Term, New York County, February 4, 1936.

*Affd., 247 App. Div. 771.

*Robert H. Elder* [*Otho S. Bowling* of counsel], for the plaintiff.

*Paul Windels, Corporation Counsel* [*J. G. L. Molloy, Alvin McK. Sylvester* and *Charles C. Weinstein* of counsel], for the defendant.

ROSENMAN, J. The plaintiff is engaged in the business of conducting an amusement center. It there operates a number of machines, commonly known as pin ball or bagatelle games. These machines have each been separately licensed by the defendant, the commissioner of licenses of the city of New York, since October 3, 1932. Such licenses run from November first of each year to October thirty-first of the following year, and have been renewed annually. The present licenses will expire October 31, 1936. The defendant is now threatening to revoke them on the ground that the machines are illegal slot machines under section 982 of the Penal Law. The plaintiff has brought this action to enjoin the defendant from proceeding with such revocation. This motion is by the plaintiff for an injunction *pendente lite*. The defendant makes a cross-motion to dismiss the complaint for insufficiency.

The machines are constructed so as to be unlocked and made ready for operation by the insertion of a coin in a slot. The playing surface is on a slightly inclined plane rising in height from the player. The playing surface, covered by glass, varies in form with the different types of machines. The essential features of each are a number of strategically placed holes each valued at a certain indicated number of points, obstructions and deflecting pins, shock absorbing bumpers or direction changers. Along the right side, running up the inclined plane, is a fixed, inclosed runway. The insertion of the coin releases for play a number of small balls. By the manipulation of a spring lever propelled against each of the balls, they are directed along the runway, one at a time, onto the upper portion of the playing surface of the machine. The balls then run down the surface of the machine. The holes are surrounded to varying degrees by pins which, if struck, will deflect the balls. The balls while rolling from the top to the bottom of the playing surface will be deflected from one pin to another until they find their way into one of the holes or until they roll to the bottom

in an " out " position. If the balls do fall into the holes in sufficient number to total a prescribed score of points, the player of the machine receives, as a prize, a coupon which is exchangeable by him for certain articles of merchandise.

The plaintiff contends that these machines are games of skill, asserting that the balls will roll into the holes or not, in accordance with the skill of the player in manipulating the lever which propels them.

At one time the defendant was apparently himself of the same opinion. He states in his opposing affidavit: " I have heretofore issued licenses for amusement centers in the belief induced by the representations of amusement center operators and their attorneys that the pin ball games submitted to my department for approval are games of skill and did not violate any provisions of the Penal Law." The machines were actually licensed by the defendant, pursuant to such belief. The defendant, as a result of judicial interpretation, is now of opinion that these games are not games of skill but games of chance, and for that reason, at the direction of the mayor of the city of New York, now seeks to revoke the licenses heretofore issued by him.

The commissioner did, however, caution those connected with the pin ball industry that if it were judicially determined that the operation of these machines and the giving of prizes in connection therewith were in violation of the Penal Law, the licenses would be revoked, and that accordingly any investment made therein would be at their risk. In fact the regulations for amusement center licenses, promulgated by the commissioner, pursuant to the provisions of section 1 of article 1 of chapter 14 of the Code of Ordinances of the City of New York, clearly indicate that no gambling shall be permitted in these amusement centers. The application for the license has the following words stamped across the face thereof: " I am aware that the Penal Law prohibits gambling * * * in connection with the license hereby applied for." And also: " The attention of the licensee herein has been called to the provisions of the Penal Law with reference to gambling." It cannot be said, therefore, that the plaintiff was not put on notice as to the hazard attending his enterprise.

The immediate cause of the action of the defendant at this time in seeking to revoke the licenses was a conviction in the Court of Special Sessions of the City of New York, Bronx County, of a person for operating a pin ball machine similar in nature to the machines here under consideration.

It is conceded that prizes are given in connection with the operation of the machines. The only question presented, therefore, on this motion for a temporary injunction, is whether the affidavits presented on both sides show clearly that the games are games of skill, as urged by the plaintiff, which do not violate the Penal Law.

Not only do the affidavits not show such fact, but they show the contrary to be the fact.

In many games, concededly games of skill, there is almost always present some element of chance. On the other hand, in many games of chance there is often present an element of skill. What is the test laid down by the courts to determine the proper category for each game; and is such test applicable to the situation at bar?

In *People ex rel. Ellison* v. *Lavin* (179 N. Y. 164) the court was called upon to construe a statute which made illegal " a scheme for the distribution of property by chance, among persons who have paid or agreed to pay valuable consideration for the chance, whether called a lottery, raffle or gift enterprise or by some other name." It was decided that in order to violate the statute it was not sufficient that there be merely an element of chance in the game or scheme, but that the dominating and controlling element had to be chance. The court said (p. 170): " The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game."

The affidavits and exhibits submitted by the defendant indicate clearly that these machines are not games of skill, but that the dominant element therein is chance. Some of the factors urged by the defendant to show the predominance of chance over skill are: (1) The strategically placed holes on the surface of the board; (2) the position of the deflecting pins and obstructions; (3) variation in the weight of the balls; (4) the irregular playing surface of the board; (5) the adjustable legs of the machines which permit the setting of the machines at various levels; (6) the lack of control over the balls after the initial velocity is given by the spring lever.

The conclusion that chance is the dominant factor in the playing of these games was also reached by the Appellate Division for the Second Department, which has held that these machines are gambling machines in that " The element of chance in the operation * * * far outweighs that of skill." (*Shapiro* v. *Moss*, 245 App. Div. 835.)

However, the test in *People ex rel. Ellison* v. *Lavin* (*supra*) is not applicable to the facts here presented or to the statute here in question. It has not been left to the courts by this statute to construe the bare word " chance." The machines about which

this controversy arises are operated by inserting a coin in a slot. Such machines are covered by a separate section of the Penal Law applicable to them alone. The section is quite different in content from the statute considered in *People ex rel. Ellison* v. *Lavin (supra)*.

Section 982 of the Penal Law makes unlawful the possession of, or permission to operate, a slot machine. It defines a slot machine as any machine which is " adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade."

It is clear that this section has completely abandoned the rule of dominant element as far as slot machines are concerned and has substituted the words " by reason of any element of chance or of other outcome of such operation unpredictable by him."

To say that these machines, as described in the answering affidavits, do not have any element of chance is to shut our eyes to the obvious.

The sections mentioned herein relative to slot machines were amended to their present form by chapter 317 of the Laws of 1934, effective May 7, 1934. It seems difficult to understand why the machines were ever licensed since such date, in view of giving of prizes and in spite of the very express provisions of the statute, if the city's present contentions in affidavit form as to the elements of chance can be sustained by evidence.

The plaintiff seeks to show that the Legislature did not intend to cover these machines by the amendment of 1934. The actual words of the statute, however, cover the machines beyond any doubt. It may be that the effect of the statute is more drastic than was intended by those who were responsible for its adoption. That cannot now be determined in view of the clear language employed. There is no ambiguity. There is nothing to show that the actual intention of the Legislature was different from that so clearly expressed in the language used by it. It may be urged that the statute imposes rules of conduct more severe than a modern day code of morality demands, that the games here under consideration are not frowned upon by respectable public opinion, and that the statute is generally out of step with the mores of the times. These

are, however, considerations to be addressed to the Legislature. The statute is quite explicit. It should be enforced; or it should be modified by the Legislature.

In the face of the defendant's affidavits, it is clear that the discretion of the commissioner as to licenses for these machines should not be disturbed by the courts. The discretion of the commissioner is fortified in this case by other facts urged by him. He shows that unsavory elements of our population are engaged in operating pin ball machines through the various parts of the city, resulting in common forms of racketeering. He also points out, by affidavits of school officials, that many school children are wasting time and money in playing these machines, and that there have been instances of petty thievery committed by children to obtain funds with which to play these games. While such accusations are not directed by the defendant at this particular plaintiff, or at others in the same business, these considerations are important in passing upon the exercise of discretion in discontinuing the licensing of such machines in general.

In *People* v. *Jennings* (257 N. Y. 196), in which case a certain slot machine was held to be not violative of section 982 of the Penal Law as it then read, the court points out the difference between criminal prosecutions for gambling and injunctions by a court of equity interfering with municipal authorities in their attitude towards alleged gambling implements. In the latter cases the discretion of the court is always to be " wisely and deliberately exercised," and certain evidence not admissible in a criminal case charging the defendant with the possession of a gambling instrument would " be relevant and competent in moving the court not to interfere with the police."

The temporary injunction is, therefore, denied.

The cross-motion for the dismissal of the complaint as not constituting a cause of action is also denied. In so far as the complaint alleges that the action is brought on behalf of the plaintiff " and all others similarly situated," it is insufficient as to the others similarly situated. Different questions of fact may arise as to the operation of the machine in various other amusement centers. There is no reason for this one plaintiff to bring this action on behalf of other plaintiffs, even though it might be clear that the other plaintiffs could be joined as parties plaintiff. The words describing the plaintiff as " suing in behalf of itself and all others similarly situated " will, therefore, be disregarded as superfluous.

The discretion of the court should not be exercised in favor of rendering a declaratory judgment in a case such as this, as is

demanded in the complaint, where it may obviously have the effect of serious interference with the enforcement of the criminal law.

In so far as the injunctive relief is requested, the complaint states a cause of action, in that paragraph eleventh thereof definitely alleges that these games are games of skill. The court is asked by the defendant to take judicial notice of the fact that they are not games of skill but games of chance or, at least, games having an element of chance. This is impossible. The defendant himself was originally of the opinion that they were not games of chance and did not violate the Penal Law, and did actually issue licenses for them.

Although it will be extremely difficult to sustain the burden of proof which is laid upon the plaintiff by this opinion, nevertheless, the plaintiff should be given the opportunity to prove its allegations. The motion to dismiss is, therefore, denied, with leave to answer within ten days after service of a copy of the order to be entered hereon.

The conclusions here reached are directed only toward the use of machines in connection with the giving of prizes. There is nothing unlawful in the operation of the machines, if no prizes are given and only amusement is the object sought. The fact that they require the insertion of a coin for operation does not make them illegal so long as no prizes are awarded for success in the use of the machine. Are they illegal because of the provisions of the section which have to do with convertibility into gambling devices? Would the fact that prizes could be given at any time place them under the ban even though no prizes were actually given? No such intention appears in the section. Convertibility appears to refer to a possibility of some change in the machines themselves or in the manner of their operation which would convert them from legal games to illegal devices. Such was the convertibility referred to in the opinion in *People* v. *Jennings* (*supra*), which was in all probability the reason for the insertion by the Legislature of this particular provision in the statute. The statute was not intended to apply to a machine legal in itself, on the operation of which the player and the owner or lessee could clandestinely bet. Once the betting is shown, then the crime is committed and the device becomes a public nuisance under section 972. But without the betting or the prizes there appears to be no violation of law.

From the papers before me, it appears that the plaintiff may avoid revocation of his licenses by discontinuing the distribution of prizes directly or indirectly.

In order to permit the plaintiff to discontinue prizes and to obtain a speedy trial of its complaint in the meantime, I shall, if requested, set the case down for immediate trial. On the other hand, if the plaintiff desires to appeal from the interpretation of section 982 of the Penal Law which is here made and which would in the absence of appeal probably be the law of the case when reached for trial, it will be given an opportunity to do so. In the latter event, in view of the fact that the licenses have been in effect so long and that a revocation thereof, if the conclusion here reached is erroneous, would work a real hardship upon the plaintiff who has made a substantial investment in alleged reliance on his license, there should be a stay until the plaintiff has had an opportunity with due diligence to apply to the Appellate Division for a stay pending appeal. It should be made clear, however, that even this very limited relief, granted to this plaintiff to maintain the *status quo* until the Appellate Division can pass upon the question of a stay, should not deter the defendant or the police from proceeding vigorously against similar machines used in the promotion of racketeering and other practices described in the opposing affidavits.