THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROSE RIVERO, Defendant.

Court of Special Sessions, Kings County, November 28, 1947.

*Miles F. McDonald, District Attorney (Mitchell Rosenberg, Daniel P. A. Sweeney* and *Abraham P. Chess* of counsel), for plaintiff.

*S. C. Levine* and *S. H. Levine* for defendant.

CANUDO, M. Motions by the defendant are denied and she is found guilty in accordance with opinion below.

The arresting officer testified that on two successive days he visited a restaurant at 430 Flushing Avenue, county of Kings, owned and operated by the defendant Rose Rivero. He states that on the second day he played a machine called Genco Advance Roll fifteen times by inserting a five-cent coin each time; that there were no signs on the machine indicating a winning score, free play or prize; that while he played the machine he conversed in English with the defendant and with a young man now identified as her son; and that during the course of his conversation with the defendant he asked her what he would get for his scores, to which she replied: "Rosita (pointing to another woman in the restaurant) got 165,000. If you get better than 165,000 I will give you five dollars when the man comes Wednesday to take the money out of the machine."

The officer testified that he did not at any time attain a score of 165,000; that when he announced his identity the defendant claimed she could speak no English; and that all questioning from that point on had to be carried on through a man present in the store, a friend of the defendant, who acted as interpreter.

According to the testimony of an engineer in the employ of the Police Department, the machine (which is now in the custody of the police) is about four feet long, a foot and a half wide and three feet high, and it stands on four legs. The insertion of a five-cent coin releases seven balls, which the player takes in his hand, one at a time, and directs into the machine. The playing area is on an inclined plane, slightly upward, facing the player and then slightly downward after the high point is reached, at about the center of the machine. *Beyond the high point is the scoring area.* This area has fourteen bumpers and seven pockets, six of the pockets being at the very rear of the machine. As the ball hits these bumpers scores of varying amounts are scored on a backboard which is part of the machine itself. Eventually the ball settles in one of the seven pockets, and here also scores of varying amounts are registered, depending on which pocket ultimately receives each ball.

Both the police engineer (who testified that he played the machine about twelve times) and the arresting officer (who played it fifteen times) stated that they tried to direct the balls in certain ways in an effort to obtain high scores, but found that after a ball would reach the high point of the runway it would roll in unpredictable fashion, striking bumpers which would deflect its course, and eventually falling into anyone of the seven pockets. They stated that it was not possible for them to control the course of the ball so as to direct it to certain bumpers or into certain pockets.

Section 973 of the Penal Law prohibits the keeping of any premises for gambling, or for making any wagers or bets depending on lot, choice, casualty, unknown or contingent event.

Section 982 of the Penal Law makes it a misdemeanor to keep, maintain, or permit the operation of any slot machine or device as defined in subdivision 2 of that section, which describes a slot machine as " any machine, apparatus or device * * * that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum * * * which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device ".

At the trial the District Attorney conceded "that this is a machine which physically is one that is not adapted or may readily be converted for the emission of any token or coin or object of value." With that stipulation in the record, the defendant, through her attorney, waived the production of the machine in court. It is important, at this point, to define carefully the terms of this stipulation, and to stress the fact that it referred only to the question of *mechanical convertibility* of the machine.

The conversations related by the officer were denied in court by the defendant and her eighteen-year-old son, both of whom testified through a Spanish interpreter. A clear issue of credibility is raised by their denials and their behavior on the stand. The defendant claimed complete ignorance of the English language, although she stated she had been in this country for four years and had conducted a business here for the past eight months. Her son remained mute when asked such elementary questions in English as "What is your name?", but subsequently admitted on cross-examination (through the interpreter) that he had studied English for three years while attending school in Puerto Rico.

Having chosen to believe the arresting officer's testimony with respect to the alleged conversations, the questions for my consideration now remain: 1. Whether the machine is a game of chance or one of skill; 2. Whether it was used or adapted in

such a manner as to cause a violation of section 982 of the Penal Law by the defendant; and 3. Whether the defendant is guilty of maintaining premises for gambling in violation of section 973 of the Penal Law.

I consider the machine in question a game of chance, and find the defendant guilty of violating sections 982 and 973 of the Penal Law.

From the description of the machine given by the People's witnesses, their statements as to their experience in playing the machine, and my examination of a photograph of the machine admitted into evidence, I have concluded that it is not possible for a player to control the ball within the scoring area, to the extent of materially affecting the score attained in the game.

Was there such an adaptation of this machine that the user became entitled to receive awards or benefits in violation of section 982 of the Penal Law? Yes. While the machine is not mechanically convertible so as to produce any token or coin or object of value or permit any free play, the defendant's agreement to pay a monetary prize if a certain score were attained on this machine, which is operated by insertion of a coin and in which the predominant element is chance, constitutes a type of adaptation contemplated by the wording of the statute.

Similarly, the promise to pay the prize upon a score attainable mainly through luck or chance constituted a violation of section 973 of the Penal Law, even though the presence of the machine in the restaurant did not in itself constitute such a violation.

The court's opinion in the case of *People* v. *Gravenhorst* (32 N. Y. S. 2d 760, 771 [1942]) discusses the purpose of the Legislature in adopting section 982 of the Penal Law. That intent, said the court, " was to discourage and repress gambling in all its forms ". The court in that case stressed the responsibility of courts to construe this statute so as to accomplish, so far as possible, the suppression of the mischief against which the section was directed.

*Times Amusement Corporation* v. *Moss* (160 Misc. 930, affd. 247 App. Div. 771 [1936]) involved an injunction proceeding to prevent the revocation of licenses on a number of machines in which the Commissioner of Licenses claimed that the dominant element was one of chance. In that case the court made the following self-explanatory statement (p. 937): " There is nothing unlawful in the operation of the machines, if no prizes are given and only amusement is the object sought. The fact that they require the insertion of a coin for operation does not

make them illegal so long as no prizes are awarded for success in the use of the machine. Are they illegal because of the provisions of the section which have to do with convertibility into gambling devices? Would the fact that prizes could be given at any time place them under the ban even though no prizes were actually given? No such intention appears in the section. Convertibility appears to refer to a possibility of some change in the machines themselves or in the manner of their operation which would convert them from legal games to illegal devices. * * * Once the betting is shown, then the crime is committed and the device becomes a public nuisance under section 972. But without the betting or the prizes there appears to be no violation of law.''

Similarly, the Genco Advance Roll could not have been considered illegal, even though scoring was dependent on chance, if there had not been a promise on the defendant's part to pay the officer the sum of $5 if he should attain a score of more than 165,000.

Along the same lines, in *Matter of Mapakarakes* (169 Misc. 766 [1938]) where a replevin action was brought for the recovery of a machine seized by a police officer, the court said: '' Certain principles regarding the operation of these pin ball machines seem to be established. Primarily, they are not *ipso facto* illegal gambling devices under article 88 of the Penal Law. * * * Nevertheless, they fall within the category of slot machines by virtue of the manner of their operation and the definite element of chance involved in playing them.''

The fact that the principal business of the defendant was the running of a restaurant and that the operation of the machine was incidental thereto does not mitigate her guilt under section 973 of the Penal Law. In ruling upon a similar question, the Court of Appeals stated, in *Hitchins* v. *The People* (39 N. Y. 454), as far back as 1868: '' The counsel for the plaintiff insists that to bring the plaintiff within the provisions of the statute, the room or building must be principally used for gambling; that permitting gambling therein * * * occasionally, is not sufficient. In this I think the counsel mistaken.'' This is still the New York law, and the same result is found on the precise question in *People* v. *Dubinsky* (31 N. Y. S. 2d 234 [1941]).

It was held in *People* v. *Cohen* (160 Misc. 10 [1936]) that the giving of a premium or prize to a party making a high score *resulting from skill and ability* in operation of a slot machine was not gambling within section 973. The converse naturally follows. We have here a situation in which the prize or pre-

mium is not a recompense or reward for some act *within the control of the player* but an award contingent on the *unpredictable course* of seven balls within a downward-tilted scoring area.

Further on the element of chance as the dominating element, the Court of Appeals stated, in *People ex rel Ellison* v. *Lavin* (179 N. Y. 164, 170–171 [1904]), which involved a lottery: " The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the *dominating element* that determines the result of the game." (Italics supplied.) And in *People* v. *Welti* (179 Misc. 76, 79 [1942]) which involved a game of cards for money, the court quoted from Corpus Juris: " It is the character of the game, and not the skill or want of skill of the player, which determines whether the game is one of chance or skill."

For the reasons stated above, the defendant's motions are denied and she is found guilty as charged.