STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
PETER RICCIARDI, DEFENDANT-APPELLANT.

Argued April 18, 25, 1955—Decided May 23, 1955.

*Mr. John E. Selser* argued the cause for appellant.

*Mr. Ralph L. Fusco,* Deputy Attorney-General, argued the cause for the State (*Mr. Guy W. Calissi,* Bergen County Prosecutor; *Mr. William C. Brudnick,* Special Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

WACHENFELD, J. The query here is whether a machine or device, popularly called a "pinball" machine, comes within the interdiction of *N. J. S.* 2*A*:112–2, which provides:

> *"Keeping slot machines for gaming*
> Any person who has or keeps in his place of business, or other premises, any slot machine or device in the nature of a slot machine, which may be used for the playing of money or other valuable thing, is guilty of a misdemeanor."

Appellant owned and operated a vending machine business in the course of which he placed "pinball" machines in various store locations under an arrangement whereby he and the storekeeper split the revenue from the machines in accordance with a prescribed formula.

The "pinball" machines in question conform in their physical appearance to the usual device of this nature, and it is unnecessary to describe their physical characteristics.

To operate the machines, the player inserts one or more nickels in a slot provided for that purpose, and for each

nickel thus deposited the odds returnable to the player are increased. Unlike the usual "pinball" device, the ultimate object of the game is not to achieve a high numerical score but to cause the squares on the scoring surface to be lit up in a straight line, either vertically, horizontally or diagonally, in a manner comparable to the ancient and innocent game of tick-tack-toe. If a player were successful in attaining this goal, the machine would respond by rewarding him with as many as 200 free games.

Under the rules of play, each free game entitled the player to operate the machine anew without inserting additional nickels. However, from the testimony adduced at the trial, the trier of facts could conclude that the player had an option to realize his reward in a more mundane manner : by "cashing in" his free games with the storekeeper, the exchange rate being five cents for each free game won. When the player exercised this option, the storekeeper promptly pressed a device located at the bottom of the machine, thereby clearing the machine of "free games." According to the testimony, the pay-offs by the storekeeper were made under express instructions from the appellant, and the total amount of the pay-offs was subtracted from the total income of the machine prior to a splitting of the profits between the appellant and the storekeepers.

Appellant and three of the storekeepers were separately indicted by the Bergen County grand jury for violation of the aforementioned statute. The storekeepers waived a jury trial and their indictments were consolidated for trial, at the conclusion of which the appellant also waived his right to a jury trial and stipulated that all of the testimony adduced at the storekeepers' trial be considered as the testimony in the trial of his indictment.

The trial judge, after having observed a demonstration of the machines during the course of the trial, concluded the dominant factor in the play of the machines was chance and not skill. He found the appellant and his co-defendants guilty as charged in the indictment, and appellant was sentenced to a term in the county jail and fined $500. The jail sen-

tence, however, was suspended. From the judgment of conviction, he appealed to the Appellate Division, and we granted certification prior to argument there.

The defense pressed upon us is that only such machines or devices as operate in the same manner or upon the same principles as the classical form of "slot machine"—the "one-armed bandit"—are within the ban of the statute, and this because the legislative concern extended only to those machines or devices which combine the essential elements of gambling: consideration, chance and prize.

It is urged that the "pinball" machines in question are not inherent gambling devices and are materially different from "slot machines" or "devices in the nature of a slot machine." First, it is said the slot machine operates on a pure chance principle, while the result attained by the player of appellant's "pinball" machines is directly affected by the skill which the player brings to the play. By diligent practice, it is said, a player can so operate the plunger which propels the balls upward as to vary the point at which the balls begin their downward journey, and this, in turn, contributes materially to the player's success or failure. Once the balls have begun their descent, however, the player loses control over their route except to the extent that he may cause deviations from their random journey by gently jarring the sides of the machine, short of "tilting" it. Presumably, the latter phase of the play also demands a high degree of skill for success.

The argument, of course, ignores the obvious fact that but a small percentage of the players have achieved the degree of skill necessary to cause the balls to follow the desired, rather than a random, route. The vast majority of the playing public necessarily wager their money against a result dictated by chance alone, and certainly as to them the play is a gamble no less than the play of the traditional "one-armed bandits." *State ex rel. Dussault v. Kilburn*, 111 *Mont.* 400, 109 *P.* 2d 1113 (*Sup. Ct.* 1941); *State v. Coats*, 158 *Ore.* 122, 74 *P.* 2d 1102 (*Sup. Ct.* 1938). The evil at which the statute is aimed is no less present in the "pinball"

machine because skill can, in the case of some, be a contributing factor in the result achieved.

However, even were we to assume that all who wager their money in appellant's pinball machines are skilled practitioners in the art, the legal conclusion still would not differ. The principle is settled that in determining the presence of gambling in a particular operation or form of activity, the criterion is not whether the element of skill is present to some degree but whether it or chance is the dominant factor in attaining the desired result. See *Hunter v. Mayor and Council of Teaneck Twp.*, 128 *N. J. L.* 164, 168 (*Sup. Ct.* 1942); *Commonwealth v. Bowman*, 267 *Ky.* 602, 102 *S. W. 2d* 382 (1936); *People ex rel. Ellison v. Lavin*, 179 *N. Y.* 164, 71 *N. E.* 753, 66 *L. R. A.* 601 (1904); *Commonwealth v. Plissner*, 295 *Mass.* 457, 4 *N. E. 2d* 241 (1936).

The collective trend of the cases was forcefully expounded by the Pennsylvania Superior Court in *Commonwealth v. Laniewski*, 173 *Pa. Super.* 245, 98 *A. 2d* 215, 216 (1953), where, in disposing of the argument that the operation of a football pool did not constitute a game of chance, it said:

" 'Chance,' as an essential element of a lottery, is used in the sense of being opposed to something which happens by plan or design, or by the exercise of volition or judgment. 54 *C. J. S., Lotteries*, § 2*b*. However, this controlling essential need not be pure chance, but may be accompanied by an element of calculation or skill. It is sufficient that chance be the dominant factor. *American Jurisprudence, Vol.* 34, *p.* 649. Hence a particular scheme may be a lottery even though skill, judgment or research enter into it in some degree, if chance in a larger degree determines the result. *State ex Inf. McKittrick v. Globe-Democrat Pub. Co.*, 341 *Mo.* 862, 110 *S. W. 2d* 705, 113 *A. L. R.* 1104. Such was the situation here. Past records, statistics and other data might be consulted and, by reasoning from them, a forecast might be made as to the outcome of any particular game or games. However, there are many unpredictable elements which can and do enter into the eventual outcome. These elements—including the fact that at least twenty-two men are concerned in playing the game—constitute the chance which makes this particular pool a lottery. No one knows what may happen once the game has begun. In the words of Mr. Justice Holmes in *Dillingham v. McLaughlin*, 264 *U. S.* 370, 44 *S. Ct.* 362, 363, 68 *L. Ed.* 742, 'What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law.' "

The difficulty lies, of course, in determining whether in the particular case one or the other element—chance or skill—predominates. We know of no test by which the boundary lines may be clearly marked for all the myriad forms of activity in which men engage. However, in the particular context, considering the evil at which the statute is aimed, we think a fair test would be whether a player possessing average skill would be successful more often than not in the venture. In view of the fact that there is not even a suggestion that the appellant was conducting his business as a philanthropy with an intent to donate his money to the public, we fully agree with the finding of the trial judge that chance and not skill is the predominant factor in the play of these machines.

Finally, it is urged that unlike the "one-armed bandit" which dispenses the prize itself, here dispensation of the prize is dependent upon the intervention of a human agency, appellant and the storekeeper. So, it is said the machine itself does not condone gambling; it is quite neutral on the subject and is therefore not within the reach of the statute.

But even the traditional type of slot machine requires the intervention of a human agency to fill up the jackpot; hence, we fail to see any distinction in fact between the operation of the two devices in that respect. In any event, the statute specifically proscribes any machine which *"may be used* for the playing of money," and does not require as a condition of illegality that the money come from the machine itself. The argument, in our view, is without merit.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.