THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT J. SCHNEIDERMAN, DEFENDANT-APPELLANT.

Argued January 9, 1956—Decided January 23, 1956.

*Mr. Clarkson S. Fisher* argued the cause for appellant (*Mr. Edward F. Juska,* attorney).

*Mr. Solomon Lautman,* Assistant Prosecutor of Monmouth County, argued the cause for the State (*Mr. Vincent J. Keuper,* Prosecutor of Monmouth County, attorney).

The opinion of the court was delivered by

WACHENFELD, J. The Monmouth County grand jury returned an indictment charging the defendant with maintaining a place to which persons might resort for gambling, in violation of *N. J. S.* 2*A*:112–3. The defendant was convicted after trial by a jury and appeals the judgment. We granted certification prior to argument in the Appellate Division.

The only question raised on appeal is the propriety of a portion of the court's charge to the jury which in effect determined that the operation of the game in question, called "Skillo-Basket," which had been demonstrated to the jury during the course of the trial, constituted gambling as a matter of law under the recent decision of *State v. Ricciardi,* 18 *N. J.* 441 (1955).

The principal device used in the game of Skillo-Basket is the familiar "wheel of chance." The wheel revolves on an axle at a 30- to 45-degree angle and has a wire mesh screen and a series of evenly spaced pins enclosing its circumference. It is divided into ten sections or baskets by painted lines and each section is assigned a number or other designation corresponding to spaces marked on the board or counter in front of the players.

At the times charged in the indictment, there was outstanding a preliminary injunction issued by the Chancery Division restraining the prosecutor and other law enforcement agents from interfering with the defendant's operation of the game when played in compliance with certain rules of play expressly contained in the court's order.

According to the rules so set forth, the game could be played by any number of players, each of whom wagered a sum of money by placing it on a space on the counter corresponding to a section of the wheel. One player, "selected" by the others, would throw a cork ball onto the wheel after

it was set in motion by the attendant, the object being to cause the ball to come to rest in the desired "basket" or section of the wheel. Those who had placed their bets on that section received prizes. In other words, the game was the usual type of wheel-of-chance contest, with the refinement that one of the bettors, instead of the attendant, set the ball in motion.

▮ The Chancery Division apparently was of the opinion that when played in such fashion, the element of skill was sufficiently dominant to nullify or remove the taint of gambling from its operation. The issuance of the injunction, however, presents no problem here as the defendant, from the record, is satisfied with the manner of its disposition at the trial level.

The State's witnesses testified the contrivance was not operated by the defendant in accordance with the approved technique, in that the attendant threw the ball onto the wheel rather than one of the players. The operation in this respect was demonstrated to the jury in the courtroom.

The defendant denied the game was manipulated in the manner described by the State's witnesses and insisted the rules approved by the Chancery Division had been adhered to.

In that portion of the charge to which objection is made, the court said:

"* * * I am going to charge you—and I suppose that this is the first time that any judge has charged this to a jury but I am going to do it—that the operation of this game such as you have seen in this courtroom is gambling."

Additionally, the court's charge continued:

"As I said before, you will take the law from me whether you like it or not. You and I do not make the laws. The legislature makes them and the court interprets them. As I have said before, that is the law and you will take that as absolute and therefore, you could, *should you find the evidence supports it*, determine that Mr. Schneiderman, the defendant in this case, kept a place to which people resorted for the purpose of gambling." (Emphasis supplied.)

The defendant now insists the first paragraph of the charge quoted above removed from the province of the jury

one of the vital elements necessary to convict, *i. e.,* the existence of gambling.

We think not.

■ Wherever the issue depends upon the determination of the facts the existence of which is not admitted, the jury and not the court must of course determine them. *Schmidt v. Marconi Wireless Tel. Co.,* 86 *N. J. L.* 183 *(E. & A.* 1914); *Clark v. Public Service Electric Co.,* 86 *N. J. L.* 144 *(E. & A.* 1914); *State v. Karpowitz,* 98 *N. J. L.* 546 *(E. & A.* 1923).

Or, as expressed in 23 *C. J. S., Criminal Law,* § 1158, *p.* 697:

"Inasmuch as it is the province of the jury to determine the guilt or innocence of the accused on all the evidence, it is an invasion of their province for the court in its charge to ignore or exclude any material evidence from their consideration; or to remove a question of fact from the consideration of the jury, such as by charging or stating as proved or as a matter of law that which should be for the jury's determination. * * *"

We likewise subscribe to the rule as set forth in 53 *Am. Jur.* 461:

"The constitutional guaranty that the right to a jury trial shall remain inviolate requires that the court shall not assume, directly or indirectly, to take from the jury or to itself the prerogative of settling questions of fact * * *"

In the instant case the court took meticulous care to emphasize that the jury were the "sole judges of the facts" and if the court should "say anything pertaining to the facts during this charge which differs from your recollection of them, your recollection will govern."

■■ But it is also the rule that questions of law are for the court's determination and are not within the province of the jury. Thus, where no disputed question of fact material to the issue is present, it is not error for the court to charge that a given operation amounts to gambling; for "whether an act is illegal * * * is a question of law to be settled by the court * * *." *Brown v. State,* 49

N. J. L. 61, 62 (*Sup. Ct.* 1886). See also *Bindernagle v. State,* 60 N. J. L. 307, 313 (*Sup. Ct.* 1897); *cf. State v. Mule,* 114 N. J. L. 384 (*E. & A.* 1935).

In substance, the court instructed the jury, if it believed the game had been operated in the manner observed in the courtroom, then as a matter of law it would constitute gambling. The court could hardly have done otherwise, unless it intended to flout or ignore the law as recently established in our decision in *State v. Ricciardi, supra,* where we held (18 *N. J.,* at *page* 445):

"The principle is settled that in determining the presence of gambling in a particular operation or form of activity, the criterion is not whether the element of skill is present to some degree but whether it or chance is the dominant factor in obtaining the desired result."

Even then the jury was specifically instructed that although such was the law, they could find the defendant guilty only if they should "find the evidence supports it."

We are satisfied that the factual equations were all left to the jury's consideration and see no impropriety in the court's charge below in the respect complained of. There was no invasion of the constitutional guarantee that the right of a trial by jury shall remain inviolate.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.