43 N.J. Super. 396 (1957)
128 A.2d 737
THE STATE OF NEW JERSEY,
v.
FRANK PAUL, MAX SPRECKMAN AND MAX RUBENSTEIN, DEFENDANTS.
Superior Court of New Jersey, Bergen County Court, Law Division.
Decided January 16, 1957.
*397 Mr. Guy W. Calissi, Bergen County Prosecutor (Mr. Thomas O'Brien, appearing), attorney for the State of New Jersey.
Mr. Morris Pashman, attorney for defendants.
SCHNEIDER, J.C.C.
The defendants were indicted by the Bergen County grand jury for violation of N.J.S. 2A:112-2. They are the admitted owners of machines, commonly known as "pinball" games, which admittedly were found in operation in premises in the Township of South Hackensack, Bergen County. There were two machines, one owned by Frank Paul, defendant, and another owned by the other two defendants. The machines were located in the Brookside Diner, a diner restaurant.
The case came on for trial on Tuesday, December 11, 1956, and the facts were stipulated without the taking of testimony. In addition thereto, one of the machines was demonstrated in court.
The defendants were charged that on April 11, 1956 they unlawfully had and kept in the premises a device in the nature of a slot machine which could be used for the playing of money or other things in violation of N.J.S. 2A:112-2.
It was stipulated that the machines were placed in the premises under an arrangement with the owner of the premises for mutual profit. At the time of the arrest, a group of approximately ten men were playing the machines.
When a certain score was hit, a free game or games registered on the machine, which would permit the men to play the machine without depositing additional coins. It was stipulated that a number of men, whose names were read into the record, would testify that they had played the machines over a period of months and that free games were obtained. The machines were opened in the presence of defendants and sums of money were found in each machine.
*398 It was stipulated that there was no evidence of cash payments to any player for the free games. It was also conceded that the part of the machine which showed the number of free games was taped over on the inside of the glass covering the same, so that the number of free games won could not be seen by anyone, but this did not prevent the receiving of the free games.
It is also conceded by the State that no prize or commodity was given for the free game, except that the free game was given. Defendants contend that this free game is not a prize or thing of value.
The State contends that it could show testimony that the players (who are not defendants in this case) made side bets on the outcome of the games. The defendants object to this testimony as not binding on the defendants, but do not challenge the truth of this testimony, by reason of lack of knowledge. The defendants claim it is neither evidential nor material.
The machine was exhibited in court and pictures of the same marked in evidence. The machine was described by the court into the record, but it may be said that this was a typical machine known as a "pin ball game," as has been described in previously recorded cases on appeal.
On both sides of the machine are two devices called "flippers" which enable the player to prevent the ball from depositing at the bottom of the machine for a period of time, thereby permitting the manipulation of the machine by the player for a higher score. This is pointed out by the defendants as being evidence that skill is required in the playing of the game, and as being different from other machines.
The machine was played by the defendants' employee but his score was beaten by the clerk of the court who was directed to play by the court. Another employee played the game and received a still higher score, but in the demonstration no one received 6,000,000 points required for a free game.
The defendants in their brief on the law contend that
1. This a game of skill, not of chance.
*399 2. There is no prize, so that it does not come under N.J.S. 2A:112-2, which provides that any person who has or keeps in his place of business or other premises, any slot machine or device in the nature of a slot machine, which may be used for the playing of money or other valuable thing, is guilty of a misdemeanor.
1. In the case now before this court the machine differed in many respects from the machine ruled upon by Justice Wachenfeld in State v. Ricciardi, 18 N.J. 441 (1955). In that case the player could deposit more than one nickel and increase the odds returnable to the player. Unlike our case, the object was not to achieve the high numerical score but to light up lights in a row and the player had an opportunity to win as many as 200 free games. In the Ricciardi case there was evidence that the player could cash in his free games, and the division of profit between store owner and machine owner was subject to subtraction for pay-offs.
In our case there was a chance to win free games, but there is no evidence of pay-off or even an ability to know how many free games were won, although the player could be told the minimum score for a free game. There was some evidence, the admissibility of which was challenged, that side bets were made by the players.
In the Ricciardi case, supra, the court stated that only a small percentage of players could achieve the degree of skill necessary to have the balls follow a desired rather than a random route:
"The vast majority of the playing public necessarily wager their money against a result dictated by chance alone * * *. The evil at which the statute is aimed is no less present in the `pinball' machine because skill can, in the case of some, be a contributing factor in the result achieved."
The court held that the criterion is not whether the element of skill is present to some degree but whether it or chance is the dominant factor in attaining the desired result.
In our case the counsel for the defendants makes much of the flippers on the bottom of the machine, contending *400 that this makes the game one of skill rather than chance. There are a number of holes in the body of the machine where the ball may be deposited, before even reaching the flippers, so that these flippers are not wholly controlling. There are also certain buttons on the machine, which when lit and hit by the ball, give free games. It is difficult to see how skill would be a controlling factor in this winning of the free game.
The courts have gone still further in the case of Martell v. Lane, 22 N.J. 110 (1956), where the court held that skill did not even have to be the dominant factor.
This court, after a study of the decisions and having observed this particular machine, and despite the differences between the machine and that of the Ricciardi case is of the firm opinion that chance is the dominant factor despite the existence of some element of skill.
2. We next take up the point raised by the defendants that there can be no conviction because there is no prize and their contention that a "free game" is not a prize for the purpose of convicting.
Our statute reads that it is sufficient that the machine "may be used for the playing of money or other valuable thing."
In the Ricciardi case, supra, there was evidence of playing of money and the defense contended the intervention of the outside agency to make pay-offs was outside the statute. The court dismissed this contention stating that the words of the statute, "which may be used for the playing of money," did not require that the money come from the machine itself. In our case, there is no evidence of pay-off. The court cannot take seriously the evidence of side bets. This would not bind the owners of the machine. The men could make side bets as easily concerning the number of cars passing the diner. In our case, the sole question is whether the "free game," without payment of money for the same or evidence on the face of the machine as to the number of free games, was in fact a valuable thing under the wording of the statute.
*401 Counsel for the defense states there is no case in New Jersey on the subject. It is true that the payment of money for the free games definitely comes under the statute. State v. Ricciardi, supra; Hunter v. Mayor and Council of Teaneck Township, 128 N.J.L. 164 (Sup. Ct. 1942). Where the slot machine provides for no free games, or prizes or return of money, it is not a gambling device. Stirling Distributors, Inc. v. Keenan, 135 N.J. Eq. 508 (E. & A. 1944).
In the case of State v. Betti, 23 N.J. Misc. 169, (Qtr. Sess. 1945), there was a machine wherein there was no recording of free games. The machine could be set for one to three free plays, but there was no device for a pay-off. This was held not to be a gambling device. The court in citing the case of Washington Coin Machine Ass'n v. Callahan, 79 U.S. App. D.C. 41, 142 F.2d 97, 99 (D.C. Cir. 1944), which cited In re Wigton's Return, 151 Pa. Super. 337, 30 A.2d 352 (Super. Ct. 1943), set forth the principle that,
"the right or privilege to a second try or a replay for a high score on a machine of this kind is not a thing of material value and hence not property in the sense in which the word is used in defining a gambling device."
The court held that the machine is not violative of the statute despite the fact that adjustments might be made in its mechanism and operation whereby free games could be awarded upon the achievement of certain designated high scores. The court held that such free games do not constitute a valuable thing within the meaning of the statute:
"As stated by the court In re Wigton's Return (supra) `If the player cannot get any other consideration or reward from his play except the right to play again, his incentive for playing must be a recreational or amusement incentive only.'"
In State v. Brandt, 122 N.J.L. 488 (Sup. Ct. 1939), there was a machine with no pay-off or free game. The court held that "the statutory phrase `may be used' [for gambling] connotes possibility of use or probability of use at best," and found no violation.
*402 These cases would seem to sustain the theory of the defense, but we must next look at the language in the case of Hunter v. Mayor and Council of Teaneck Township, 128 N.J.L. 164 (Sup. Ct. 1942). In this case the machine paid off in free games up to 94 games. In this case also, the free games could be cancelled out after the payoff by a device clearing the machine. This was stronger than our instant case, but the court in quoting a line of cases including Alexander v. Martin, 192 S.C. 176, 6 S.E.2d 20 (Sup. Ct. 1939), and Alexander v. Hunnicutt, 196 S.C. 364, 13 S.E.2d 630 (Sup. Ct. 1941), held that since amusement has value and added amusement has additional value, and since that additional amusement is obtained by chance, and without the paying of additional compensation therefor, there is involved in the game the three necessary elements of gambling, viz: chance, price and prize.
The decision in Hunter v. Mayor and Council of Teaneck Township, supra, was followed in the case of Stafford v. Garrett, 128 N.J.L. 623 (Sup. Ct. 1942). This was an Alcohol Beverage Control case where the Supreme Court was asked to decide if a machine was a gambling machine under the regulations of the Alcohol Beverage Department. The regulation was identical to the language of the statute in this case. The machine was also similar because there were free games without money payoff. The court held that the machine was in violation of the regulations and came under the decision in Hunter v. Mayor and Council of Teaneck Township.
Decisions outside of the State in favor of the defendants' contention are: State v. Waite, 156 Kan. 143, 131 P.2d 708, 148 A.L.R. 874 (Sup. Ct. 1942), held, free games was not "property" under the Kansas statute; Town of Centerville v. Burns, 174 Tenn. 435, 126 S.W.2d 322 (Sup. Ct. 1939); Gayer v. Whelan, 59 Cal. App.2d 255, 138 P.2d 763 (App. Ct. 1943), free game not an article of value and is not an inanimate object to be called a thing; Stoutamire v. Pratt, 148 Fla. 690, 5 So.2d 248 (Sup. Ct. 1941), thing of value or valuable thing does not include playing for amusement; *403 Times Amusement Corp. v. Moss, 160 Misc. 930, 290 N.Y.S. 794 (Sup. Ct. 1936), affirmed 247 App. Div. 771, 287 N.Y.S. 327 (App. Div. 1936). In re Mapakarakes, 169 Misc. 766, 8 N.Y.S.2d 826 (Sup. Ct. 1938); Commonwealth v. Mihalow, 142 Pa. Super. 433, 16 A.2d 656 (Super. Ct. 1940), no violation because no prize or money paid; Urban's Appeal, 148 Pa. Super. 101, 24 A.2d 756 (Super. Ct. 1942), held unlawful because money paid out, but court stated if only free game and no money, it would reach an opposite conclusion.
Decisions outside the State of New Jersey in favor of the State's contention are: State v. Mint Vending Machine, 85 N.H. 22, 154 A. 224 (Sup. Ct. 1931); People v. Cerniglia, 11 N.Y.S.2d 5 (Mag. Ct. 1939); People v. Gravenhorst, 32 N.Y.S.2d 760 (Sp. Sess. 1942); Painter v. State, 163 Tenn. 627, 45 S.W.2d 46, 47, 81 A.L.R. 173 (Sup. Ct. 1932); these above cases call a "thing of value" as a subject of gaming, may be anything affording the necessary lure to indulge the gambling instinct. 148 A.L.R. 882.
Anything that contributes to the amusement of the public is a thing of value. Steed v. State, 189 Ark. 389, 72 S.W.2d 542 (Sup. Ct. 1934); Stanley v. State, 194 Ark. 483, 107 S.W.2d 532 (Sup. Ct. 1937).
Free games automatically won even though no coins, tokens or slugs or the like are used are "things of value" so as to render machine a gambling device despite fact no money or prize are given to players. State v. Wiley, 232 Iowa 443, 3 N.W.2d 620 (Iowa Sup. Ct. 1942); Alexander v. Martin, 192 S.C. 176, 6 S.E.2d 20 (Sup. Ct. 1939).
Kraus v. City of Cleveland, 135 Ohio St. 43, 19 N.E.2d 159 (1939), where token is discharged to be used only for free games, it is a gambling device because amusement is a thing of value.
Steely v. Commonwealth, 291 Ky. 554, 164 S.W.2d 977 (Sup. Ct. 1942), free games where no money was paid, held that the winning of a right to replay possesses the value of a nickel, the amount of its cost. The player, if successful, *404 wins the value of a nickel as invested and also the chance of winning additional free plays by the use of the free game.
Giomi v. Chase, 47 N.M. 22, 132 P.2d 715 (Sup. Ct. 1942), free games are things of value; People v. One Pinball Machine, 316 Ill. App. 161, 44 N.E.2d 950 (App. Ct. 1942); Broaddus v. State, 141 Tex. Cr. R. 512, 150 S.W.2d 247 (Crim. App. 1941); State v. Langford, 144 S.W.2d 448 (Tex. Civ. App. 1940); Hightower v. State, 156 S.W.2d 327 (Tex. Civ. App. 1941).
We thus see that the courts have made decisions both for and against our present situation. We usually look to the intention of the Legislature, but our gambling statutes in most cases were written long before the advent of the mechanical machine used as in this case.
Counsel for the defense has made the point that the Legislature could have provided specifically to cover these situations if it so intended. He also points to the fact that the court in the case of State v. Ricciardi, supra, never held that free games alone made the machine illegal and that the gist of the issue in that case was the bestowing of a prize by the outside agency.
If we read the language in some of the cases, we determine that the court has frowned upon the use of these types of machines as an incentive to gaming, and it appears that the greater trend is to the philosophy that even though attempts are made to "squeeze" the machine under the wording of the statute, basically it is against public policy to permit these machines to operate.
"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter, but to do violence to the spirit and thwart the beneficent objects and purposes, of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified, and cunning mechanical inventions." City of Moberly v. Deskin, 169 Mo. App. 672, 155 S.W. 842, 844 (Ct. App. 1913).
*405 In People v. Cerniglia, 11 N.Y.S.2d 5, 7 (Mag. Ct. 1939), the court stated it was not misled by the apparent harmlessness of awarding free games, inasmuch as that is an incentive that fosters the gambling spirit, and that the element of chance is always present in respect to these machines, and that combining the element of chance with the indictment of receiving something for nothing results in gambling.
In Giomi v. Chase, supra, the court said that when the legislature rendered unlawful these machines, it refrained from attempting any enumeration of the multitude of items comprehended within the phrase "anything of value."
"No doubt the legislature, mindful of the ingenuity ever employed to escape the interdiction of anti-gambling laws, reasoned that if it adopted an all embracing, all consuming phrase, such as this [anything of value], its true meaning and intent could not be defeated by subtle and refined construction."
In our New Jersey case, Hunter v. Mayor and Council of Teaneck Township, supra, the court said the game was designed to and does appeal to, and induces, lures and encourages the gambling instinct of winning free games which may be converted into cash (not in our game), or used for additional amusement without additional compensation therefor.
"The pinball machines involved are nothing but ingeniously designed and purposefully constructed mechanical gaming devices to appeal to, induce, lure and encourage the gaming instinct in the public generally and children particularly."
This court is of the opinion that despite the differences of opinion concerning the subject, that the elements of chance, price and prize exist in these machines.
The defendants are found guilty as charged.