UNITED STATES of America ex rel. Arthur DOREY, Petitioner-Appellee,

v.

STATE OF NEW JERSEY and Ann Klein, Commissioner of Institutions and Agencies and Allen Hoffman, Superintendent of the New Jersey State Prison at Trenton, New Jersey, Respondents-Appellants.

No. 76–2389.

United States Court of Appeals, Third Circuit.

Argued June 6, 1977.

Decided Aug. 8, 1977.

William F. Hyland, Atty. Gen. of N. J., Trenton, N. J., for respondents-appellants; Frederick S. Cohen, Deputy Atty. Gen., Appellate Section, Princeton, N. J., of counsel and on the brief.

Michael Critchley, John P. Roche, Newark, N. J., for petitioner-appellee.

Before WEIS, Circuit Judge, CLARK,[*] Associate Justice, and GARTH, Circuit Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Defense counsel argued to the jury that petitioner had not participated in a burglary, though conceding that someone had committed the crime. Thereafter, the state trial judge refused to instruct the jury on the elements of breaking and entering and larceny because the facts showing breaking and entering and larceny had been admitted. In the circumstances of this case, we find no reversible constitutional error and vacate the grant of habeas corpus by the United States District Court.

Petitioner was convicted by the New Jersey state courts of entry with intent to steal and larceny of a safe. The Superior Court of New Jersey, Appellate Division, affirmed, and the Supreme Court of New Jersey denied certification. Petitioner then sought a writ of habeas corpus which the district court granted, subject to the right of the State to retry him.

At the trial in the state court, the prosecution introduced evidence that at about 3:00 A.M. on September 2, 1973, the night watchman for the Bamm Hollow Country Club saw two men tugging at the safe in the club office. He left the clubhouse and described what he had seen to one of the grounds keepers, who went to a nearby house and summoned the police. As the prowl car entered the club parking lot, a black Chrysler, which had gone on to the grass near the clubhouse, went into reverse and began to back into the parking lot. The police stopped the unlighted car and apprehended the petitioner and another occupant.

The safe was found outside the clubhouse, leaning against a light pole a short distance from the front steps. The safe had been scraped on one side, and the slate steps of the clubhouse had been damaged as if the safe had slid down them. Paint chips from the safe were found on the steps. The metal holders in a jalousie window in the rear of the building had been bent away and a number of glass slats had been removed, leaving a gap large enough for a man to crawl through. No prying tools were discovered on the scene.

In searching the Chrysler, the police found the trunk completely empty, the spare tire and tools removed. However, in the passenger's compartment, they observed two pairs of gloves and a flashlight. The gloves were wet, and the officers noted a considerable amount of dew on the ground at the time. Laboratory examination of the gloves revealed the presence of chips of paint similar to that on the office safe.

During his opening address to the jury, defense counsel argued that no fragments of glass or paint from the safe had been found on the shirt or pants of the defendants, "as you might expect they should, had they actually entered or had they been the ones who did the breaking." He also emphasized "mere presence of people at the scene of a crime . . . is not evidence of participation in that crime. . . ."

In his closing remarks, the defense lawyer said that the case for the prosecution was based on possibilities,

> "but there are certain things in it from which you can find certainty about which

---

[*] The Honorable Tom C. Clark, Associate Justice, Supreme Court of the United States (Retired), sitting by designation, heard the oral argument and participated in the decision in this case but died before the opinion was written.

there is no dispute whatsoever. For example, there is no dispute with respect to the time . . . [t]he time you will recall that Mr. Craddock [the night watchman] sees two men pulling the safe is 3:15. The time you will recall when the Officer arrives on the scene is 4:18."

\*    \*    \*    \*    \*    \*

"[I]t's a substantial period of time in that it approximates one hour and that is certain, that is positive testimony from that Witness Chair which is wholesome, which is reliable and which is trustworthy because it's confirmed by different people."

\*    \*    \*    \*    \*    \*

"You can conclude, therefore . . . that whoever came there to remove this safe abandoned the notion and left it there because if there are two men in there at 3:15, twenty minutes later at 3:35 they'd be on their way . . . .'"

In discussing the difficulties of removing the jalousie slats without a tool, he said:

"No, it was as the first Officer testified and put in his report, it was, in fact, a prying instrument . . . something by way of a burglar's tool forced open those windows and broke that glass . . . So query: Where is the pry bar? . . . They don't have it because the people who went in there at 3:15 and probably left there like about 3:30 and didn't return, they took that pry bar with them."

\*    \*    \*    \*    \*    \*

"So Mr. Ford [a detective] tried to do away with the necessity of breaking and entering into this building with a prying instrument where in reality, . . . there had to be an instrument . . .'"

\*    \*    \*    \*    \*    \*

"There was a forced entry of the office door over here done as the Officer said by body . . . .'"

The closing argument's thrust was that the two codefendants had not gone through the window and would not have been physically able to move the safe outside.

Early in his charge, the trial judge said:

"Now, I think as all Counsel have indicated to you, and it is quite so, the issue in this case does not evolve around whether someone broke and entered into the Club and whether someone stole the safe, because I think it's quite apparent someone did that. The real issue in the case is whether or not Mr. Dorey and Mr. Fabio were involved in that particular criminal activity or not."

The judge went on to discuss the evidence about the safe:

"Now, you infer from that quite reasonably that somebody took the safe and dragged it out of the office and down the front steps . . . . . You are entitled to draw inferences such as that."

The judge also commented on the testimony about the jalousie window:

". . . reasonable inference from that is that somebody got into the Bamm Hollow Country Club in an illegitimate way by climbing through a window. Again, it's a reasonable inference and you are entitled to draw that kind of reasonable inference from the evidence that's in the case."

After cautioning the jury several times that the burden of proof was on the state and the defendants did not have to produce any evidence, the judge said:

"Now, in this case as we have said from the beginning the criminal charges involved are charges of breaking and entry with intent to steal and charges of larceny. In this case there is no basis for believing other than that. There was someone who broke and entered the Bamm Hollow Country Club and that someone toted the safe out or dragged it out from the office to where it was found.

"So from the proofs before you, it would be I think unreasonable to find other than that, there was, in fact, a breaking and entry and there was, in fact, a larceny."

After the instructions had been completed, defense counsel asked that the jury be charged on the elements of larceny and

breaking and entering. The trial court refused on the ground that those facts were not in dispute.

The Appellate Division of the New Jersey Superior Court found that

"[i]n the context of the manner in which the case was tried, there was no dispute as to whether an entry with intent to steal had occurred or whether a larceny of the safe and its contents had occurred."

The court concluded there was no error in the charge read as a whole and, moreover, any possible error was harmless.

The district court, relying on *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *United States v. Manuszak*, 234 F.2d 421 (3d Cir. 1956), held the petitioner entitled to the requested instruction, and granted the writ of habeas corpus.

■ The extent of reliance by the district court on *United States v. Manuszak, supra*, led to error in the disposition of this case. In *Manuszak*, the defendant was convicted of aiding and abetting a theft. The government produced evidence of the larceny, but the defendant denied all knowledge of the occurrence. In his charge, the district judge assumed the theft's occurrence and created in the jurors' minds the impression that their only concern was whether the defendant was implicated. We reversed, holding that all factual elements of the prosecution's case should have been submitted to the jury. *Manuszak* is distinguishable because there was no concession, explicit or implied, on the part of the defense. But more importantly, *Manuszak* came to this court on direct appeal from the district court. It did not purport to pass upon an error of constitutional dimension but only upon a matter of federal criminal procedure. The case *sub judice* came to the district court on collateral attack from a state conviction. In that circumstance, a different standard of review applies.

■ As the Supreme Court observed in *Splawn v. California*, 431 U.S. 595, 599 97 S.Ct. 1987, 1990, 52 L.Ed.2d 606 (1977), where the prosecutions occur in federal courts:

"[O]ur authority to review jury instructions is a good deal broader than is our power to upset state court convictions by reason of instructions given during the course of a trial. *See Cupp v. Naughten*, 414 U.S. 141[, 94 S.Ct. 396, 38 L.Ed.2d 368] (1973); *Henderson v. Kibbe*, 431 U.S. 145 [97 S.Ct. 1730, 52 L.Ed.2d 203] (1977). We can exercise the latter authority only if the instruction renders the subsequent conviction violative of the U. S. Constitution."

In *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), also a habeas corpus case, the Court of Appeals relied on *In re Winship, supra*, in reversing denial of a writ. The appellate court had concluded that failure of the state trial court to charge on causation in a complex homicide case had resulted in "an impermissible risk that the jury had not made a finding that the Constitution requires." 431 U.S. at 151, 97 S.Ct. at 1735. In reversing, the Supreme Court stated:

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." 431 U.S. at 154, 97 S.Ct. at 1736.

The Court also noted that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. at 155, 97 S.Ct. at 1737.

In *Cupp v. Naughten, supra*, the Court emphasized that the test in a collateral proceeding is not merely whether the challenged instruction was erroneous but whether it so infected the entire trial that the resulting conviction violated due process.

*In re Winship, supra*, is not determinative because, here, the trial judge did charge the jury that the presumption of innocence was applicable and at no time did he place the burden of proof upon the defendant. Moreover, as the Court observed in *Patterson v.*

*New York*, — U.S. —, —, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977), a state may regulate the burden of producing evidence and persuasion unless "it offends some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental."

■ Under the law of New Jersey, when a matter is undisputed and conceded, even where that fact constitutes an element of the crime charged, it is not error to instruct the jury that the fact has been established and, thus, in a practical sense, limit the jury's role. *State v. Schneiderman*, 20 N.J. 422, 120 A.2d 89 (1956); *State v. Mack*, 131 N.J.Super. 542, 330 A.2d 631 (1974); *State v. Slocum*, 130 N.J.Super. 358, 327 A.2d 244 (1974); *State v. Byra*, 128 N.J.L. 429, 26 A.2d 702 (1942), *aff'd* 129 N.J.L. 384, 30 A.2d 49 (1943), *cert. denied*, 324 U.S. 884, 65 S.Ct. 1025, 89 L.Ed. 1434 (1944).

■ Applying those precedents to the case at bar results in no unfairness or violation of due process. The defense's efforts focused completely on denial of participation—not on the occurrence of the crime which was conceded. Indeed, there is no basis in the record to controvert the commission of the larceny. To hold that the conviction here was obtained in a trial which offended a principle of justice so deeply rooted as to be ranked fundamental ignores the reality of the proceeding. The defense's strategy of admitting the commission of a crime but denying participation is not unusual and, indeed, at times may be the only course available. Although it would have been desirable for the trial judge to have charged as the defendant requested, the failure to do so under the circumstances of this case does not rise to the dimensions of constitutional error.

■ The Supreme Court has been urged to adopt a rule of automatic reversal of criminal convictions obtained in trials infected with constitutional error. The Court, however, has reaffirmed the "harmless error" rule and measured the degree of constitutional infirmity by a standard of "harmless beyond a reasonable doubt."

*Cupp v. Naughten, supra* (jury instruction); *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1972) (*Bruton* violation); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1971) (confession obtained in absence of counsel); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968) (admission of confession of codefendant); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966) (comment on accused's failure to testify); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) (introduction of illegally obtained evidence). Thus, even if we were persuaded that the charge was constitutionally infirm as a matter of Due Process, habeas corpus would be warranted only if the harmless error test was not satisfied.

■ We are convinced that the requested instructions would not have altered the verdict. From the facts presented and the statements of both the court and counsel, the jury clearly understood the charge against defendants. *See Henderson v. Kibbe, supra*. A specific listing of the elements of the crime would not have cast any different light on the happening nor caused a jury to believe that the crimes had not been committed. The clarity and extent of the evidence in this case would not have been altered by recitation of factors already established.

Accordingly, we conclude that, even if the error be classified as constitutional in scope, it was in fact harmless beyond a reasonable doubt.

The order of the district court will be vacated.