**Strenten VUJOSEVIC, Appellant**

v.

**John R. RAFFERTY, Superintendent of Rahway State Prison, and W. Carey Edwards, Attorney General of New Jersey.**

**No. 87–5509.**

United States Court of Appeals,
Third Circuit.

Argued March 14, 1988.

Decided April 18, 1988.

Anderson D. Harkov (argued), Alfred A. Slocum, Office of the Public Defender, Toms River, N.J., for appellant.

W. Carey Edwards, Greta–Ann Gooden (argued), Atty. Gen.'s Office, State of N.J., Trenton, N.J., for appellees.

## OPINION OF THE COURT

### JAMES HUNTER, III, Circuit Judge:

Appellant Strenten Vujosevic seeks a reversal of the order of the District Court denying him a writ of habeas corpus. His petition to the federal court alleged that he is in state custody despite two violations of his constitutional rights during his trial for murder: (1) his written confession introduced at trial was obtained in violation of his right to remain silent and was involuntary; (2) the trial court refused to instruct the jury on the lesser included offense of aggravated assault, in violation of Vujosevic's rights under the fifth, sixth and fourteenth amendments. For the reasons set forth below, we find prejudicial constitutional error with respect to the trial court's refusal to instruct the jury on the lesser included offense of aggravated assault. We also find that appellant's written confession was obtained in violation of Vujosevic's right to remain silent. Inasmuch as our finding with respect to the refusal to instruct on aggravated assault requires us to reverse the District Court's order and to remand the case so that relief may be granted, we need not determine whether the written confession was also involuntary or whether the admission of the confession is subject to a harmless error analysis.

### BACKGROUND

This case arose out of the killing of Frederick Baron in the early morning hours of July 18, 1981. Baron was walking near the railroad tracks in Elizabeth, New Jersey, when he encountered Vujosevic, his co-defendant Ronald St. Laurent, and their companion William Treacy. Treacy apparently left soon after the encounter began. After Treacy's departure, Baron was killed by one or both of the remaining men. Vujosevic and St. Laurent then left the area and happened upon Darlene Kirby and several

of her friends in a nearby parking lot. Alarmed by what the two men told her about the incident, Kirby returned home to tell her mother what she had heard. Mrs. Kirby called the police. This led to the discovery of Baron's badly battered body, and also to the arrest, several hours later, of Vujosevic.

When Vujosevic was arrested, he was informed of his *Miranda* rights. He invoked the right to remain silent and was taken to a holding cell without further questioning. Some twenty minutes later, he was again warned of his rights, and was asked to sign a form acknowledging that warning. Vujosevic again refused to speak and was not questioned further. Several hours later, at about 10:00 a.m., Saturday morning, Detective John Mottley, who was supervising the investigation of the killing, again warned Vujosevic of his rights. Vujosevic then signed a waiver, told Mottley that he did not recall any of the events of the previous night, and declined to make a written statement. At that point, Vujosevic was apparently returned to his cell.

Vujosevic was not questioned again until 9:00 p.m. on Sunday night. Appellant has emphasized that at this point he had been held without arraignment since early Saturday morning, that he was to be arraigned on Monday morning, and that the police realized he would be assigned an attorney at the arraignment. On Sunday night, Mottley again warned Vujosevic of his rights and then told him that his brother had been arrested and charged with the killing. Mottley then asked Vujosevic if he wished to reconsider and make a statement. At about 9:40 p.m., Vujosevic agreed to make a statement in which he exonerated his brother and inculpated himself.

Prior to trial, Vujosevic moved to suppress the written statement. The court granted the motion based on its factual findings that (1) Mottley had Vujosevic transported to Elizabeth police headquarters where he read Vujosevic his *Miranda* rights; (2) Vujosevic did not initiate the conversation; (3) Mottley told Vujosevic, "Your brother is in custody in jail and

he's being charged with this offense as well;" (4) the police had investigated Vujosevic's brother's alibi; and (5) Mottley knew that the brother was about to be released from jail. Based on these findings, the court concluded that Vujosevic had been "conned" into making the statement, and granted suppression. On interlocutory appeal, the Appellate Division reversed the suppression order without opinion.

At trial, the following testimony was presented. Treacy testified that Vujosevic and St. Laurent repeatedly asked Baron where he was going, and demanded a cigarette. Baron asked to be left alone. Vujosevic pushed Baron, at which point Treacy left the scene. Kirby testified that when she met Vujosevic and St. Laurent in the parking lot, she noticed blood on Vujosevic's clothes (the arresting officer also said that Vujosevic was dirty and appeared to have fresh blood on his clothes and limbs). Her testimony that Vujosevic told her that he and St. Laurent had just "bashed some guy's head on the tracks" was corroborated by two other prosecution witnesses. Kirby said she heard someone on the tracks crying for help and that Vujosevic responded by saying "if he ain't dead now, by the time the cops get there he'll be." Kirby then left for home while Vujosevic and St. Laurent walked away.

Assistant Medical Examiner Shiego Kondo testified that he arrived on the scene at about 2:00 a.m. and pronounced Baron dead. His determination that the cause of death was asphyxiation due to strangulation was confirmed by the autopsy he later performed. Michael Baker, an inmate at the jail where Vujosevic was held pending trial, testified that Vujosevic confessed to killing Baron, and told Baker in detail how he had kicked, punched, and choked Baron to death.

Vujosevic's own testimony, which was essentially the same as his written statement, admitted his participation in beating Baron, but not in the choking which caused the death. He testified that after Treacy's departure, he walked away from St. Laurent and Baron to urinate. When he re-

turned, he found St. Laurent on top of Baron, beating him. Vujosevic said that he tried to stop St. Laurent, but when St. Laurent told him that Baron had made homosexual advances to St. Laurent, "something snapped in his head" and Vujosevic joined St. Laurent in beating Baron. Vujosevic claimed that he punched and kicked Baron, but that he did not choke him, and that he did not know whether St. Laurent did so. He said that when Baron grabbed his leg, he stopped beating Baron, and tried unsuccessfully to stop St. Laurent as well. Vujosevic claimed he then left the scene before St. Laurent and that St. Laurent later admitted to Vujosevic that he had choked Baron, and that when he had walked away, Baron was not moving.

At the close of evidence, Vujosevic requested that the court instruct the jury on the lesser included offense of aggravated assault, on the theory that his testimony admitted criminal conduct but could support a finding that Baron's death was not caused by Vujosevic. The court refused to give the instruction. It instructed the jury on three levels of homicide: murder, aggravated manslaughter, and manslaughter. The jury returned a verdict of guilty of aggravated manslaughter. On February 26, 1982, Vujosevic was convicted and sentenced to twenty years imprisonment, with a parole ineligibility period of ten years, as well as a $3,000 penalty.

The conviction was affirmed by the Appellate Division on January 30, 1985. 198 N.J.Super. 435, 487 A.2d 751 (App.Div. 1985). In its opinion, the Appellate Division noted the "extraordinary depravity" of the conduct involved in the case, *id.* at 438, 487 A.2d at 753, and held that while the trial court should have given an aggravated assault instruction, its failure to do so was harmless error. *Id.* at 444–46, 487 A.2d at 756–57. In dictum (because the denial of suppression was already law of the case, *Id.* at 447, 487 A.2d at 757), the court added that if the denial of suppression was erroneous, then that error was also harmless. *Id.* at 447–48, 487 A.2d at 758. The New Jersey Supreme Court de-

nied Vujosevic's petition for certification. 101 N.J. 247, 501 A.2d 920 (1985).

After the New Jersey Supreme Court denied review of the case, Vujosevic filed the current petition for a writ of habeas corpus in the District Court. The court began its review by rejecting the State's argument that Vujosevic had not yet exhausted available state court remedies, and went on to consider the merits of the petition. The exhaustion issue has not been argued by the state in this appeal, and there is no reason to question the District Court's finding that Vujosevic has satisfied the exhaustion requirement of 28 U.S.C. § 2254(b).

On consideration of the merits, the District Court found unpersuasive Vujosevic's argument that his right to remain silent had not been scrupulously honored by the State, as well as his argument that his written confession had been involuntary. In addition, the court noted, any error in admitting the confession was harmless beyond a reasonable doubt. The court therefore refused to grant the petition on the basis of the confession. With respect to the jury charge, the court agreed with the Appellate Division that the jury should ideally have been charged on aggravated assault, but that failure to do so was harmless error. The court therefore refused to grant the petition on this ground as well. The court thus denied the petition and added that there was no probable cause to appeal. Vujosevic filed a timely notice of appeal. The motions panel granted a certificate of probable cause to appeal on October 28, 1987.

## DISCUSSION

Both Vujosevic's claim that his written confession was obtained in violation of his right to remain silent and his claim that the trial court's refusal to instruct on the lesser included offense of aggravated assault constituted prejudicial constitutional error are meritorious. First, the failure to instruct on aggravated assault unfairly deprived Vujosevic of his primary defense theory; having gone forward with a theory that he committed a crime but did not

cause the victim's death, Vujosevic was unable to have the jury decide whether his version of the facts was correct. Second, the circumstances under which the police resumed their questioning of appellant after his repeated refusal to provide a written statement give rise to the inference that the resumption of questioning for a fourth time was intended to induce appellant to abandon his self-imposed silence. The resumption of questioning for no other reason than to persuade a defendant to abandon his right to remain silent is inconsistent with the scrupulous observance of that right. This court cannot say that a properly instructed jury would, beyond a reasonable doubt, have nevertheless found Vujosevic guilty of aggravated manslaughter.

### I. The Lesser Included Offense Instruction

While both the Appellate Division and the District Court agree that the trial court should have instructed the jury on aggravated assault, the State still contests this point. We therefore briefly set out the argument as to why the failure to make the instruction was erroneous.

■ In capital cases, a court must give a requested instruction on lesser included offenses where it is supported by the evidence. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). This court applies that requirement to non-capital cases as well. *Bishop v. Mazurkiewicz*, 634 F.2d 724 (3d Cir.1980), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981). This requirement is based on the risk that a defendant might otherwise be convicted of a crime more serious than that which the jury believes he committed simply because the jury wishes to avoid setting him free. *See Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973). In the current case, Vujosevic presented evidence supporting a conviction for aggravated assault, but his evidence also supported a finding that Vujosevic did not cause Baron's death, which would relieve him of liability for homicide. Since the evidence sup-

ported an instruction on aggravated assault, and since such an instruction was requested, the trial court committed error by refusing to give the instruction.

■ The real issue here is whether the error can be said to be harmless. Both the Appellate Division and the District Court found the error harmless, in large part because there was an instruction given as to the lesser included offense of simple manslaughter and the jury convicted Vujosevic of the more serious offense of aggravated manslaughter. Had the jury not been convinced of Vujosevic's guilt of aggravated manslaughter and yet been reluctant to set him free, the courts argued, it would have returned a verdict of guilty on the lesser offense of manslaughter. We hold that the courts were wrong as a matter of law to find the error harmless beyond a reasonable doubt.

The Supreme Court indicated in *Beck, supra*, that when a defendant is clearly guilty of some offense and the evidence warrants a conviction for a lesser offense than the offense charged, there is a substantial risk that in practice a jury, when charged only with the greater offense, may return a guilty verdict even though in doubt as to the proof of some of the elements of the greater offense, rather than allow the defendant to go free. 447 U.S. at 634, 100 S.Ct. at 2388. Vujosevic testified at trial that he had participated in the beating of the victim. Therefore, as *Beck* instructed, even if the jury was in doubt whether appellant's actions caused the victim's death, there was a risk that it would return a verdict of guilty of some offense rather than allow appellant to go free. Put another way, if a juror had doubted whether Vujosevic caused the death, he would have had the nearly impossible burden of persuading the other jurors to allow Vujosevic to go free in the face of Vujosevic's own admission of guilt of a serious crime. This is precisely the danger *Beck* intended to address.

The fact that the jury chose aggravated manslaughter rather than manslaughter, a less severe offense, does not necessarily mean that it was convinced beyond a rea-

sonable doubt that Vujosevic's actions caused the victim's death. It may mean nothing more than that, causation aside, Vujosevic's beating of the victim fit the instruction of aggravated manslaughter better than manslaughter. Vujosevic's own testimony not only supported a conviction for assault, but it also established a level of culpability which would make a conviction for simple manslaughter nonsensical. Aggravated assault is an attempt to cause, or actually to cause "serious bodily injury to another ... purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life ...". N.J.S.A. 2C:12–b(1). Similarly, aggravated manslaughter is defined as criminal homicide committed "when the actor other than purposely or knowingly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11–4a. By contrast, the culpability requirement for simple manslaughter is homicide committed recklessly or in the heat of passion. N.J.S.A. 2C:11–4c.

Given the level of culpability required for aggravated assault, and the fact that Vujosevic's defense theory was that he committed aggravated assault but did not cause Baron's death, the instruction on simple manslaughter was not a constitutionally adequate substitute for an instruction on aggravated assault. The factual question placed in issue by Vujosevic's defense was not the level of culpability, but rather the causation of Baron's death. Even a rational juror who thought Vujosevic did not cause the death, but who did not want to set Vujosevic free, might not vote for conviction on simple manslaughter, because Vujosevic's culpability was clearly not mere recklessness or heat of passion. The manslaughter instruction did not necessarily offer the jury a rational compromise between aggravated manslaughter and ac-

quittal; only an aggravated assault charge could do that.

Under these circumstances, it is pure speculation to forecast what verdict the jury would have returned if properly instructed based on the jury's verdict of aggravated manslaughter after an incomplete instruction. Accordingly, we cannot say that the trial court's constitutional error was harmless beyond a reasonable doubt.[1]

## II. The Confession

■ Vujosevic asserts two different theories in contending that the admission of the written confession violated his constitutional rights. First, he contends that the police did not "scrupulously honor" his decision to remain silent, under the reasoning of *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). Appellant's second theory is that his confession must be deemed involuntary because he was deceived into confessing when Detective Mottley informed him that his brother had been arrested for the same murder even though Mottley knew that the brother's alibi had been investigated and that he was about to be released. Finally, Vujosevic argues that any error in admitting the confession must be deemed *per se* prejudicial under the rule of *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed. 2d 975 (1958), and *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), as interpreted by this court in *Jones v. Zimmerman*, 805 F.2d 1125 (3d Cir.1986). We need only reach appellant's contention that his right to remain silent was not "scrupulously honored."

In *Mosley, supra*, the Supreme Court decided that while there is no absolute bar against subsequent questioning of a suspect who has invoked the right to remain silent, 423 U.S. at 102–03, 96 S.Ct. at 325–26, the admissibility of any statements elic-

---

**1.** The state asserts that Vujosevic has the burden of proving that the error so infected the entire trial that the resulting conviction violated due process, citing *United States ex rel. Dorey v. New Jersey*, 560 F.2d 584 (3d Cir.1977). In *Dorey*, the court noted that an error in a jury instruction does not justify relief in a collateral proceeding unless it so infected the entire trial that the

resulting conviction violated due process. *Id.* at 587. Both *Beck* and *Bishop* have already determined that the failure to instruct on a lesser included offense which is supported by the evidence constitutes a violation of due process. Therefore, we need only determine whether the due process violation constituted harmless error beyond a reasonable doubt.

ited by such subsequent questioning depends upon whether the invocation of the right to remain silent was "scrupulously honored." *Id.* at 103–04, 96 S.Ct. at 326.[2] The facts in *Mosley* supported the conclusion that the defendant's rights had been scrupulously honored: the police ceased the initial interrogation, resumed questioning only after a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been the subject of the earlier interrogation, i.e., one that Mosley had not previously declined to discuss. *Id.* at 106–07, 96 S.Ct. at 327–28.

In this case, as in *Mosley*, the police ceased questioning each time Vujosevic invoked silence and did not resume questioning until a significant amount of time had passed and a fresh set of warnings had been provided. In contrast to *Mosley*, however, the police here questioned Vujosevic on four occasions about the same crime and did not obtain a written statement from him until they essentially bluffed him into agreeing.[3] We find these factual dissimilarities render *Mosely's* result inapposite to this case.

In finding that Mosley's right to remain silent had been scrupulously honored, the Supreme Court was careful to point out that the case did not involve a situation where police persisted "in repeated efforts to wear down [a suspect's] resistance and make him change his mind." 423 U.S. at 105–06, 96 S.Ct. 327. Since *Mosley*, several courts of appeals have found that a defendant's right to remain silent had been scrupulously honored despite the resumption of questioning on more than one occasion. *See e.g., Jackson v. Dugger*, 837 F.2d 1469 (11th Cir.1988) (defendant invoked right to

remain silent two times before giving statement in response to questioning); *United States v. Udey*, 748 F.2d 1231 (8th Cir.1984) (defendant invoked right to remain silent two times before making incriminating statement in response to questioning); *Jackson v. Wyrick*, 730 F.2d 1177 (8th Cir. 1984) (defendant questioned three times before giving incriminating statement). However, in none of those cases did the facts give rise to an inference that the sole purpose for resuming questioning was to persuade the defendant to abandon his right to remain silent. In contrast, in several cases where the right to remain silent was held not to have been scrupulously honored, the circumstances lead to a conclusion that the police resumed questioning for no other reason than to induce the defendant to change his mind. *See, e.g., United States v. Charlton*, 565 F.2d 86 (6th Cir.1977); *United States v. Olof*, 527 F.2d 752 (9th Cir.1975); *United States v. Barnes*, 432 F.2d 89 (9th Cir.1970) (post-*Miranda*, pre-*Mosley* ).

For example, in *United States v. Olof, supra*, the police resumed questioning concerning the same crime after three hours and the provision of a new set of *Miranda* warnings, at which point they confronted the defendant with a description of prison as a "dark place" where they "pump air to the prisoners." The Ninth Circuit held that the police officers failed to "scrupulously honor" the defendant's right to halt questioning, stating:

> The agents did not reinterview appellant for the limited purpose of finding out whether the suspect had changed his mind. [Citation omitted]. Appellant was confronted with the description of the

---

**2.** In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that when a suspect invokes his right to counsel, questioning must cease and may not be resumed until counsel has been provided or until the suspect himself initiates the communication. The *Edwards* rule, however, is inapposite to this case because Vujosevic did not request an attorney when he refused to speak.

**3.** After a suppression hearing, the trial court found as a matter of fact that Mottley knew Vujosevic's brother was to be released, and that

Vujosevic had been "conned" into making a statement. While the State contends in its brief that Mottley did not yet know enough to release the brother, this seems unlikely. Moreover, although the suppression order was reversed without opinion by the Appellate Division, it does not seem possible that the reason for doing so was a clear error in the trial court's factual finding. The trial court's finding appears to be supported by the record and is entitled to a presumption of correctness. 28 U.S.C. § 2254(d).

unpleasantness of prison 'for the obvious purpose of getting [appellant] to abandon [his] self-imposed silence ... in flagrant violation of ... *Miranda.*' *United States v. Barnes,* 432 F.2d 89, 91 (9th Cir.1970).
527 F.2d at 753–54. In *United States v. Barnes, supra* (post-*Miranda*, pre-*Mosley*), the court reached the same result where the defendants, who had twice refused to answer questions, finally confessed after the officers brought in the defendants' accomplice, had the accomplice recite her confession and then asked the defendants if it was true. The court found that the confrontation with the accomplice was for the obvious purpose of getting the defendants to abandon their twice invoked right to remain silent in violation of *Miranda.* 432 F.3d at 91.

In contrast, in *Jackson v. Wyrick, supra,* the court found that the defendant's right to cut off questioning had been "scrupulously honored". Jackson, a prisoner, was questioned by officials after the murder of a prison guard at which time he refused to give a statement and the questioning ceased. Twenty-four hours later the investigators again questioned Jackson. This time he signed a rights waiver form, but he did not give any statements implicating himself in the murder. Subsequently the interrogators questioned another prisoner who implicated Jackson in the murder. Armed with this new information, the officers returned to question Jackson and Jackson confessed. In holding that the officers scrupulously honored Jackson's right to remain silent, the court distinguished the *Olof* case by emphasizing that there was no evidence in the record to suggest that the officers attempted to induce Jackson not to invoke his right to remain silent. 730 F.2d at 1184.

Vujosevic refused to give police a written statement on three separate occasions. The record does not reveal any valid reason for the officers to believe that Vujosevic might wish to change his mind. Although Vujosevic's brother had been taken into custody, the trial court found that Detective Mottley knew prior to attempting to elicit a statement from appellant for a fourth time that the brother's alibi had been investigated and he was about to be released. The confrontation of Vujosevic with the deceptive information that his brother had been arrested and charged with the murder at the final hour before he was to be arraigned and presumably provided counsel, and after he had refused several times to give a written statement incriminating himself, rather plainly suggests that Mottley was attempting to induce him to surrender his right to remain silent. Such conduct was not consistent with the scrupulous observance of Vujosevic's right to remain silent. Accordingly, should the State elect to retry Vujosevic, his written confession is not constitutionally admissible at the trial.[4]

### CONCLUSION

The judgment of the District Court denying the writ of habeas corpus will be reversed, and the case will be remanded so that the writ may issue upon appropriate terms.

---

**4.** Because of our holding, we need not decide whether the constitutional error in admitting Vujosevic's statement is prejudicial *per se,* or reversible only if not harmless beyond a reasonable doubt. In particular, we do not reach the question of whether this court's decision in *Jones v. Zimmerman,* 805 F.2d 1125 (3d Cir. 1986) is applicable to the case before us. We are disturbed, however, that the district court discussed *Jones* as if it were applicable, but then declined to follow it, apparently because it viewed the case as wrongly decided. *See* opinion at 12 n. 3, reprinted in Plaintiff's Brief at Pa. 16. It is, of course, patent that a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning behind such precedent. But since we do not decide whether *Jones* controls this case, the district court's dictum with regard to that case is not the basis for our reversal.