Filed 11/19/14  P. v. Mazyck CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDGAR MAZYCK,<br><br>    Defendant and Appellant. | B247130<br><br>(Los Angeles County<br>Super. Ct. No. YA082430) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed as modified with directions.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Alene M. Games and Seth McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

Edgar Mazyck (appellant), also known as Terry White, appeals the judgment after he was convicted in count 1 of assault with a deadly weapon on Bernadine Nobbs (Nobbs), with a finding of the infliction of great bodily injury (Pen. Code, §§ 245, subd. (a)(1), 12022.7, subd. (a)),[1] and in count 2 of forcible oral copulation with E. A. (A.) (§ 288a, subd. (c)(2)(A)), with a finding he used a deadly and dangerous weapon (§ 12022.3, subd. (a)) and two findings the offense fell within the provisions of the One Strike law as appellant had used a deadly or dangerous weapon and inflicted great bodily injury on a person other than A. in the commission of the offense (§ 667.61, subds. (a), (b), (c)(7), (d)(6) & (e)(3) [the circumstances found by the jury supporting the imposition of life terms of 15 years to life and 25 years to life]).

In bifurcated proceedings, the jury made findings of the service of six prior separate prison terms (§ 667.5, subd. (b)) and that appellant had suffered a prior serious felony that qualified as a strike within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

At sentencing, the trial court declined to exercise its discretion to strike the prior serious felony conviction so as to sentence appellant without the provisions of the Three Strikes law.  (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.)  The trial court sentenced appellant to an aggregate term in state prison of 77 years to life, consisting of a doubled, determinate upper base term of four years, or eight years, for the assault in count 1, enhanced by a term of three years for the infliction of great bodily injury and by six years for the service of the prior separate prison terms.  For count 2, pursuant to the Three Strikes and One Strike laws, it imposed a consecutive doubled, indeterminate term of 25 years to life, or 50 years to life.  (§ 667.61, subds. (a), (c)(7) & (e)(6).)  The trial court then imposed a further 10-year fully consecutive determinate upper term for the finding of use of a deadly and dangerous weapon in the commission of count 2.[2]

---

[1]    All further statutory references are to the Penal Code unless otherwise designated.

[2]    After his arrest and on January 24, 2012, appellant was committed pursuant to section 1382 to the Department of Mental Health and was committed later to Patton State Hospital.  Patton State Hospital had prior experience with appellant, and the hospital

## CONTENTIONS

Appellant contends the trial court failed sua sponte to charge the jury as to lesser included offenses to the charge of forcible oral copulation. We find error in the failure to charge on lesser included offenses as to the count 2 offense of forcible oral copulation. Nevertheless, we decline to reverse the judgment as the error is harmless. He also claims sentencing error. We will strike the finding of the infliction of great bodily injury pursuant to section 12022.7, subdivision (a) in count 1 and vacate the term imposed for that enhancement.

## BACKGROUND

Viewed in the light most favorable to the judgment (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the trial evidence disclosed at approximately noon on September 30, 2011, Nobbs and a friend, A., were sleeping behind a curtain inside the grounds of a gated, abandoned Inglewood residence. Nobbs awoke to hear a lighter flicking on and off. She pulled aside the curtain. Appellant stood there naked with a crack pipe and a lighter in his hands. He demanded Nobbs suck his "dick." Nobbs refused. At trial, Nobbs and A. testified they did not know appellant and had never seen him before.

When Nobbs refused, appellant started punching Nobbs in the face with his fists. She slipped and fell face down on the ground. Appellant straddled and sat on her. He told her she was going to "suck his dick" or he would beat her. He pummeled her, then

_____

personnel concluded appellant was malingering to such an extent that hospital personnel could not determine whether appellant was mentally ill, as well as malingering. On March 9, 2012, Patton State Hospital certified appellant was restored to competency. On August 28, 2012, the trial court in Department 95 found appellant competent to stand trial, and appellant was transferred to the Inglewood court for a September 12, 2012, preliminary hearing and later trial. Throughout the proceedings, his trial counsel informed the trial court that counsel had a doubt as to competency. After the August 28, 2012, ruling, the trial court refused to once again recess proceedings for a further section 1368 determination. The trial court ruled appellant had been restored to competency with a finding he was malingering. Thereafter, during trial, the trial court made findings on appellant's disruptive conduct and that appellant was selectively mute in addressing the trial court.

3

grabbed a hammer and used it to hit her on the head. A. was still asleep, but Nobbs's cries for help roused A.

When A. awoke, appellant stood up on his knees, grasped A. by the shirt, pinning her to the ground, punched A. in the face, then grabbed A. by the hair, stood up on his knees, and pushed A.'s face at his penis. Appellant demanded A. "suck his dick." A. said, "No, no, no." Appellant threatened to hit Nobbs with the hammer again if A. did not accede to his demands. A. put her mouth on appellant's penis. Appellant threatened if A. bit him or if she did not "do it right," he would use the hammer on Nobbs. Appellant used the hammer again on Nobbs, rendering Nobbs momentarily unconscious.

The women both struggled against appellant, and appellant ripped off A.'s pants in the melee. Finally, A. broke free. A. ran, and appellant started to follow A., who jumped the fence and ran to a grassy area on the grounds of a Taco Bell restaurant next door. Appellant also jumped the fence, but not before he turned and picked up another hammer and used again it to hit Nobbs, fracturing the bones in one of her hands. Nobbs followed appellant over the fence and ran across the street to a McDonald's restaurant. Police officers arrived, and Nobbs identified appellant as her assailant. He was arrested.

A passing motorist testified at trial he had telephoned 9-1-1 after he saw A. jumping the fence of the abandoned residence naked below the waist. The motorist then saw A. was followed over the fence by a naked man who disappeared down the side of the residence.

Nobbs and A. were transported to hospitals. Nobbs had a fractured skull and severe cuts to her scalp and ear, some of which required plastic surgery. Bones in one hand were broken, and she had to wear a cast for a month. The emergency room doctor saw no evidence of injury to Nobbs's brain on her CT scan. He testified despite there being no evidence of injury, there might be traumatic injury to Nobb's brain. He opined such blunt trauma injury may affect a person's personality after such an injury. At trial, Nobbs complained of resulting headaches. Immediately after the attack, A. had red marks on her face and arms where appellant had punched her. She was bloody when initially contacted at the Taco Bell restaurant by a police officer.

When the police officers entered the assault scene, they discovered bedding covered with a large quantity of blood. Hammers were recovered from the McDonald's restaurant and the scene of the attack.

## DISCUSSION

1. *The trial court failed sua sponte to charge the jury as to lesser included offenses*.

Appellant contends the trial court had a duty to charge the jury with lesser included offenses of attempted forcible oral copulation (§ 664, 288a, subd. (c)(2)(A)), assault with the intent to commit oral copulation (§ 220), assault (§ 240) and battery (§ 242). We conclude the evidence is substantial in requiring sua sponte instructions on the lesser included offenses of assault with the intent to commit oral copulation and battery.

a. *The relevant legal principles*.

" '[E]ven absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' (*People v. Birks* (1998) 19 Cal.4th 108, 112 (*Birks*).) '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." [Citations.]' (*Id*. at p. 119.) Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' ([*People v.*] *Breverman* [(1998)] 19 Cal.4th [142,] 162 [(*Breverman*)].)" (*People v. Smith* (2013) 57 Cal.4th 232, 239-240 (*Smith*).)

5

We review de novo a trial court's failure to instruct on lesser included offenses and review the evidence in the light most favorable to the defendant. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5)

" '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citations.]" (*Smith, supra*, 57 Cal.4th at p. 240.)

"Evidence is substantial if 'a reasonable jury could find [it] persuasive.' (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8 (*Barton*).) 'In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury.' (*Breverman, supra*, 19 Cal.4th at p. 162.) '[S]ubstantial evidence to support instructions on a lesser included offense may exist even in the face of inconsistencies presented by the defense itself' (*id*. at pp. 162-163) and 'even when as a matter of trial tactics a defendant . . . fails to request the instruction.' (*Breverman*, at p. 154; see *Barton*, at pp. 196, 203 [a 'jury's truth-ascertainment function' is impaired unless 'the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence' is given, and ' "[t]he jury should not be constrained by the fact that the prosecution and defense have chosen to focus on certain theories" '].)" (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137-1138, fn. omitted.)

"[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred (*Watson, supra*, 46 Cal.2d 818, 836)." (*Breverman, supra*, 19 Cal.4th at p. 178, fn. omitted.)

6

Oral copulation is defined as any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. (§ 288a, subd. (a); *People v. Grim* (1992) 9 Cal.App.4th 1240, 1242-1243.)

"Battery" is "any willful and unlawful use of force or violence upon the person of another." (§ 242.)

Section 220 provides that "any person who assaults another with the intent to commit mayhem, rape, sodomy, oral copulation . . . shall be punished by imprisonment in the state prison for two, four, or six years."

An attempt to commit a crime has two elements: the specific intent to commit a crime and a direct but ineffectual act done toward its commission. The act must be a direct movement beyond preparation that would have accomplished the crime if not frustrated by extraneous circumstances. (*People v. Carpenter* (1997) 15 Cal.4th 312, 387.)

           b. *The analysis*.

               (i) *The trial court erred by failing to charge with lesser included offenses*.

The offenses of assault and battery are lesser included offenses of a forcible oral copulation offense. (*People v. Hughes* (2002) 27 Cal.4th 287, 366 [battery is a lesser included offense of certain sexual crimes, including forcible sodomy and rape]; *In re Jose M.* (1994) 21 Cal.App.4th 1470, 1477 [every act of rape includes an assault]; see *People v. Atkins* (2001) 25 Cal.4th 76, 88 [in discussing lesser included offenses to arson, the court cites the example that "attempted rape, a specific intent crime, is a lesser included offense of rape, a general intent crime."].)

In *People v. Babock* (1911) 160 Cal. 537, 540, the court held assault with the intent to commit rape is a lesser included offense of forcible rape. (See discussions in *In re Jose M., supra*, 21 Cal.App.4th at p. 1477; *People v. Ramirez* (1969) 2 Cal.App.3d 345, 352, disapproved on other grounds in *People v. Ghent* (1987) 43 Cal.3d 739, 757 (*Ghent*); *People v. Rundle* (2008) 43 Cal.4th 76, 143-144 & fn. 31, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) An assault with intent

7

to commit rape is merely an aggravated form of an attempted rape, the latter differing from the former only in that an assault need not be shown. An assault with intent to commit a crime necessarily embraces an attempt to commit that crime. (*Ghent, supra*, 43 Cal.3d at p. 757; see also *People v. Rupp* (1953) 41 Cal.2d 371, 382.)

The offense of forcible oral copulation is a general intent sexual offense, as is forcible rape. It follows by parity of reasoning that the lesser included offenses listed by appellant constitute lesser included offenses to forcible oral copulation. (See also *People v. De Porceri* (2003) 106 Cal.App.4th 60, 68; *People v. Brown* (1948) 87 Cal.App.2d 281, 286 [it is error to convict defendant of rape, sodomy, plus assault with intent to commit those offenses].)

The Attorney General cites *People v. Santos* (1990) 222 Cal.App.3d 723, 739 (*Santos*) for the proposition battery is not a lesser included offense of the charged offenses. In *Santos*, the defendant was charged with two counts of lewd and lascivious acts by force on a child under the age of fourteen years (§ 288, subd. (b)), four counts of oral copulation by force with a child under the age of fourteen years and more than ten years younger than the defendant (§ 288a, subd. (c)) and one count of sexual penetration by force (§ 289, subd. (a)). The court held battery is not a lesser included offense of the charged offenses. (*Santos,* at p. 739.) However, the court found the battery there was a lesser related offense within the meaning of *People v. Geiger* (1984) 35 Cal.3d 510, 532 (*Geiger*), a case that the California Supreme Court has subsequently overruled. (*Birks, supra*, 19 Cal.4th at p. 136.)

This court disagrees with the decision by the court in *Santos*. The *Santos* court reached its conclusion on this point without a further explanation of its reasoning. (See also the discussion in *People v. Shockley* (2013) 58 Cal.4th 400, 405-405, disapproving *People v. Thomas* (2007) 146 Cal.App.4th 1278, 1293, a decision disagreeing with *Santos*.) The decision in *Geiger* was later overruled. Moreover, we find the decision in *Hughes, supra*, 27 Cal.4th at page 366, unequivocally holding battery is a lesser included offense of general intent, forcible sexual offenses, to be controlling. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450.)

8

(ii) *The error is harmless*.

Under *People v. Watson* (1956) 46 Cal.2d 818, 835 (*Watson*), an error is harmless unless it is reasonably probable defendant would have achieved a more favorable result had the court not erred. *Watson* requires a reversal only when there is a reasonable probability, not a mere theoretical possibility, that the instructional error affected the outcome of the trial. A posttrial review focuses not on what a reasonable jury *could* do but what such a jury is *likely* to have done in the absence of error under consideration. (*People v. Lee* (1999) 20 Cal.4th 47, 62.) In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result. (*Breverman, supra*, 19 Cal.4th at pp. 177-178.)

The evidence at trial was as follows. Nobbs testified appellant assaulted her and A. Initially, A. was asleep. When Nobbs awoke, appellant demanded Nobbs orally copulate him. When Nobbs refused, appellant beat Nobbs, she fell on her stomach, and he straddled her and hit her with his fists and a hammer. When A. awoke, Nobbs heard appellant direct A. to "suck his penis." Appellant remained atop Nobbs. But he stood up on his knees, grabbed A. by the shirt and then by the hair, and turned his torso toward A. He then pulled A.'s face to his flacid penis. Nobbs was looking to her left as she lay on the ground. She observed A. put her mouth on appellant's penis. Nobbs testified that in attempting to obtain A.'s cooperation in an act of oral copulation, appellant threatened A. and gave A. directions. For example, appellant told A. to "grab [his] dick" and "hold it." Appellant was telling her what to do, and A. attempted resistance. Nobbs described that appellant "would put his penis in [A.'s] mouth and he would get mad." Then appellant would pull A.'s head back and hit Nobbs with the hammer.

However, at trial, A. told a different version of the attack. A. said that when A. awoke, appellant turned to her, pinned her to the ground by grasping her top at the neckline and repeatedly punched her. He hit her whenever she tried to keep him from hitting Nobbs with the hammer and a crowbar he had in his hands. Appellant said

9

nothing during the attack. A. attempted to escape his grasp and to help Nobbs. Appellant kept hitting Nobbs, who kept passing out and then regaining consciousness. Nobbs repeatedly asked A. to go get help. During the struggle and her own beating, appellant "got to [A.'s] pants and tore them off" her. A. finally escaped appellant's grasp and his pummeling fists. A. ran and climbed over the fence.

A. acknowledged in her testimony after the police arrived, she spoke to a police officer. A. could not recall the statement she made. When asked whether she told the police officer appellant turned to her during the assault and said, "Suck on this pipe, b----," she denied she made such a statement to the officer. A. also denied appellant put his penis into her mouth, even for a brief second.

During cross-examination, A. said that she was absolutely certain "there had been no contact between [her and appellant] in terms of oral sex." But A. also testified she had a history of mental problems and seizures. She implied she took psychotropic medication. A. admitted her memory was poor and "comes and goes." She told the prosecutor there were times she did not remember a lot.

A.'s testimony was impeached by Inglewood Police Officer Brigette Villavicencio (Officer Villavicencio). The officer testified that on September 30, 2011, a woman had flagged her down and pointed to A., who was lying on a patch of grass bleeding at the Taco Bell restaurant. A. in turn pointed to a house next to the Taco Bell and asked Officer Villavicencio to help her friend, "Bernie." A. was hysterical and crying.

The officer testified A. said she awoke that day to find a naked man, appellant, lying atop Nobbs demanding, "Suck my dick." A. jumped on and punched appellant. Appellant threw her off and punched her in the face and on her arms. Nobbs and A. attempted to "fight off" appellant. A. claimed at one point, appellant said to her, "Suck on this pipe, b----," and "for a second," appellant "put his penis," which was hard, "in her mouth." They wrestled. In the struggle, appellant ripped off A.'s pants. A. saw the man strike Nobbs on the head with a hammer, and Nobbs passed out. A. ran to get help.

The parties stipulated on September 30, 2011, after Nobbs was admitted to the hospital, Officer Villavicencio interviewed Nobbs. The officer's summary of that interview failed to include any mention of A. or of forcible oral copulation on A.

Asked about her failure to mention A. in the statement she had given to Officer Villavicencio, Nobbs said she could not recall the content of her statement. She explained she had been in pain at the time. The officer had not asked her specifically what appellant had done to A.; the officer only had asked questions of her as to what appellant had done to her.

We view the evidence in this case as overwhelmingly establishing appellant's guilt. It was apparent from the trial evidence A. changed her testimony due to issues of extreme embarrassment due to the unpleasant circumstances of the attack, as well as a genuine loss of memory on her part. We do not believe, after consideration of all the trial evidence, any reasonable jury would have reached the contrary conclusion that Nobbs was prevaricating about the circumstances of the attack and had not observed the act of forcible oral copulation. In our view, the instructional error did not contribute to the verdict. Accordingly, we affirm the judgment.

Defendant cites a federal case, *Vujosevic v. Rafferty* (3d Cir. 1988) 844 F.2d 1023 (*Vujosevic*), which extended to noncapital cases the decision in *Beck v. Alabama* (1980) 447 U.S. 625 (*Beck*). In *Beck*, the United States Supreme Court held that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in appropriate circumstances. (*Beck*, at p. 638.) The court specifically left open the question whether the due process clause would require jury instructions on lesser included offenses in noncapital cases. (*Id*. at p. 638, fn. 14.) Defendant extrapolates from *Vujosevic* the *Chapman* standard should be applied in this case. (*Chapman v. California* (1967) 386 U.S. 18, 36.)

11

We decline appellant's request to use the more stringent *Chapman* standard to evaluate the error here.  The federal circuit courts are split on the question of extending *Beck* to noncapital cases (see *Solis v. Garcia* (9th Cir. 2000) 219 F.3d 922, 928-929), and this court is not bound by the decisions of the lower federal courts (*People v. Gray* (2005) 37 Cal.4th 168, 226).  The California Supreme Court has held in a noncapital case, the error is, at most, an error of California law alone.  (*Breverman, supra*, 19 Cal.4th 142, 165.)  It is thus subject only to the standard of review stated in *Watson*.  (See also *People v. Valdez* (2004) 32 Cal.4th 73, 119 & fn. 23; *People v. Waidla* (2000) 22 Cal.4th 690, 736, fn. 15; compare *People v. Banks* (2014) 59 Cal.4th 1113, 1161.)

2.  *The sentencing issue*.

Appellant also raises a sentencing issue.  He contends the use of the infliction of great bodily injury finding on Nobbs was improperly used both to enhance his term of imprisonment in count 1, as well as to serve as the basis for imposing the 25-years-to-life term under the One Strike law in count 2.  He urges subdivision (f) of the One Strike law, section 667.61, bans such a dual use of the great bodily injury finding.  He also argues section 654, prohibiting multiple punishment requires the three-year enhancement on the count 1 assault be ordered imposed and stayed.

The Attorney General agrees and cites the decisions in *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*) and *People v. Rodriguez* (2012) 207 Cal.App.4th 204 (*Rodriguez*).[3]

---

[3]     Section 667.61 provides in pertinent part, as follows.

"(a)  . . . [A]ny person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 25 years to life.

(b)  Except as provided in subdivision (a), (j), (l), or (m), any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life.

12

a. *Background.*

At sentencing, for count 1, the trial court imposed the term for assault with a deadly weapon offense enhanced by a three-year term pursuant to section 12022.7, subdivision (a). For count 2, the trial court imposed a consecutive term of 25 years under the One Strike law by applying section 667.61, subdivisions (a) and (d), i.e., on the basis of the great bodily injury finding in count 2. It then doubled that term under the Three Strikes law. As it had not used the circumstance of the use of a deadly weapon in

---

(c) This section shall apply to any of the following offenses: [¶] . . . [¶] (7) Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a. [¶] . . . [¶]

(d) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] . . . [¶] (6) The defendant personally inflicted great bodily injury on the victim or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8. [¶]

(e) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] . . . [¶] (3) The defendant personally used a dangerous or deadly weapon or a firearm in the commission of the present offense in violation of Section 12022, 12022.3, 12022.5, or 12022.53. [¶] . . . [¶]

(f) If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a), (b), (j), (l), or (m) to apply *have been pled and proved*, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a), (b), (j), (l), or (m) whichever is greater, rather than being used to impose the punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or the punishment under another provision of law can be imposed in addition to the punishment provided by this section. However, if any additional circumstance or circumstances specified in subdivision (d) or (e) have been pled and proved, the minimum number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), (j), or (l) and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other provision of law. [¶] . . . [¶]

(o) The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." (Stats. 2011, ch. 361, § 5.)

13

selecting a One Strike term for count 2, it enhanced count 2 for the weapon use pursuant to section 12022.3, subdivision (a), with a consecutive 10-year term.

The amended information, filed November 6, 2012, complied with the requirements of the One Strike law by making the required allegations to support the trial court's sentence.

b. *The analysis*.

The Attorney General concedes error, and we agree.

Generally, a pled and proved circumstance (here, the infliction of great bodily injury) that triggers application of the section 667.61 sentencing scheme may not be used in dual fashion to impose an additional punishment under another sentencing provision. (§ 667.61, subd. (f); *Rodriguez*, *supra*, 207 Cal.App.4th at pp. 214-215; see also *Mancebo, supra*, 27 Cal.4th at p. 757.)

Here, the "minimum circumstance[]" pled and proved and then used to impose the 25-years-to-life One Strike term was the infliction of great bodily injury within the meaning of section 12022.7, subdivision (a). Under subdivision (f) of the One Strike sentencing scheme, the defendant was required to be sentenced by use of this circumstance under section 667.61, subdivision (a) only. Subdivision (f) does not permit a dual use of the infliction of great bodily injury so as to enhance another nonstrike offense in the case -- here, the assault with the deadly weapon in count 1.

As subdivision (f) is determinative of the issue appellant raises, we do not address the issue under section 654. (See *People v. Ahmed* (2011) 53 Cal.4th 156, 163 [when a specific statute applies, the trial court need not consider the more general section 654].)

We will strike the section 12022.7, subdivision (a), finding with respect to count 1 and vacate the three-year term the trial court imposed as an enhancement.

14

## DISPOSITION

The judgment is modified to strike the section 12022.7, subdivision (a), enhancement imposed in count 1 and to vacate the three-year term imposed pursuant to the enhancement. As modified, it is affirmed.

The trial court shall cause its clerk to amend the abstract of judgment in conformity with this opinion and send the amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

15